Odra A. DAVIS, Jr., Appellant,

v.

**CASCO PRODUCTS CORPORATION,**
Appellee.

No. 22944.

United States Court of Appeals
Fifth Circuit.

July 18, 1967.

George S. Brown, Roscoe B. Hogan, Birmingham, Ala., for appellant.

White E. Gibson, Jr., William G. Somerville, Jr., Birmingham, Ala., for appellee, Lange, Simpson, Robinson & Somerville, Birmingham, Ala., of counsel.

Before COLEMAN and DYER, Circuit Judges, and ESTES, District Judge.

ESTES, District Judge:

This is an appeal by the plaintiff, Odra A. Davis, Jr., in a diversity action for damages from an order of the district court quashing service of process upon

defendant, Casco Products Corporation (Casco).

The complaint alleges that Casco negligently manufactured a heating pad, not safe for its intended use, which was marketed in Alabama and which caused plaintiff's infant son while sleeping on the pad to be electrically burned to death. The complaint was served on Casco by substituted service on Alabama's Secretary of State pursuant to Title 7, § 199 (1), Code of Alabama.[1]

Based upon the affidavit of Casco's president and testimony in open court by a salesman for a brokerage agency representing Casco and three officials of Alabama wholesale drug supply companies, the district court quashed service of process.

The evidence on the question of amenability to service of process is not in dispute. Casco is a Connecticut corporation, with its principal place of business at Bridgeport, Connecticut. It is not qualified to do business in Alabama and has not designated an agent for service of process in Alabama. Casco's only connection with Alabama is sales of products through a Jacksonville, Florida brokerage agency, Bonnie I. Smith Company, Inc. (Smith), who employed Charles A. Williams, a resident of Fairfield, Alabama, as Smith's representative in Alabama and Northwest Florida. Smith represents some 25 different manufacturers, including Casco. Salesman Williams is free to cover his territory as he wishes and is paid a salary plus commission by Smith, receiving no compensation directly from Casco. Casco had no control over Williams and paid Smith by commission only. Casco does not maintain any office in Alabama and does no television or radio commercials. Advertising is in national magazines and trade journals. During the preceding 12 months, Casco had sold a total of $11,270.03 to the four wholesale drug supply houses whose officers testified.

This court has recently examined the requirements for amenability to service of process in Phillips v. Hooker Chemical Corp., 375 F.2d 189 (5 Cir., 1967), and said, "Each case is to be decided on its own bottom under the law of the forum state." Id. at 192. While the opinion in the case of New York Times v. Sullivan, 273 Ala. 656, 144 So.2d 25, 34 (1962), rev'd on other grounds, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, states that "the scope of [Alabama's] substituted service is as broad as the permissible limits of due process,"[2] the

---

1. Title 7, § 199(1), Code of Alabama, provides in part:

"Any non-resident person, firm, partship, general or limited, or any corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall do any business or perform any character of work or service in this state shall, by the doing of such business or the performing of such work, or services, be deemed to have appointed the secretary of state, or his successor or successors in office, to be the true and lawful attorney or agent of such non-resident, upon whom process may be served in any action accrued, accruing, or resulting from the doing of such business, or the performing of such work or service, or relating to or as an incident thereof, by any such non-resident, or his, its, or their agent, servant or employee. And such service shall be valid whether or not the acts done in Alabama shall of and within themselves constitute a complete cause of action."

2. The Supreme Court of Alabama did not decide the jurisdictional question solely on The Times' "doing business" in Alabama, but held that "The Times, by questioning the jurisdiction of the lower court over the subject matter of this suit, made a general appearance, and thereby submitted itself to the jurisdiction of the lower court." 144 So.2d at 36. The United States Supreme Court agreed with the Alabama Supreme Court as to the jurisdictional point and refused to consider whether "the assumption of jurisdiction over [The Times] by the Alabama courts overreaches the territorial limits of the Due Process Clause." The court stated that such claim was "foreclosed from our review by the ruling of the Alabama courts that the Times entered a general appearance in the action and thus waived its jurisdictional objection * * *." 376 U.S. at 264, n. 4, 84 S.Ct. at 717.

As to the "doing business" issue, the Times carried on extensive activities in Alabama, such as having a staff correspondent in Alabama on frequent occa-

court cites Ex parte Emerson, 270 Ala. 697, 121 So.2d 914 (1960), and Boyd v. Warren Paint and Color Co., 254 Ala. 687, 49 So.2d 559, as authority for this statement. The facts in the *Emerson* case are so similar to those in the present case as to be controlling. There, the defendant-manufacturer, King Laboratories (King), sold to retail drugstores in Alabama a product, "Pedolatum," allegedly inherently dangerous which injured the plaintiff. King was located in Texas, and the product was marketed through commissioned salesmen, apparently representing King exclusively, who would solicit orders and send them to King in Texas for acceptance and filling. The product would be shipped directly to Alabama customers or delivered personally by the salesmen. The salesmen were paid directly by the manufacturer. The salesmen, however, paid their own travel and operational expenses and were not controlled as to their routes or methods. The Alabama Supreme Court held, "The men selling Pedolatum in Alabama were either selling a product which they had purchased or were independent contractors and therefore * * * King was not doing business within the State of Alabama." 121 So.2d at 920.

In the present case and in the *Emerson* case, the manufacturer-defendant paid commissions and shipped merchandise into Alabama. The facts differ in some respects, but in each such respect Casco has a more tenuous connection with Alabama than did King. For example, King employed salesmen directly, whereas Casco sold through Smith, a Florida brokerage agency. King's salesmen apparently represented only King, whereas the Smith salesman, Williams, solicited orders for some 25 manufacturers. Since the Supreme Court of Alabama held the *Emerson* facts insufficient to permit substituted service (and approvingly cited the *Emerson* decision in New York Times v. Sullivan, supra), it is clear that the facts in the preesnt case do not permit, under Title 7, § 199(1), Code of Alabama, as interpreted by the Supreme Court of Alabama, the challenged service.

In Dooly v. Payne, 326 F.2d 941 (5 Cir., 1964), this court affirmed an order quashing Alabama substituted service. The defendant company did not reside in Alabama and had no agents or representatives there for the solicitation of business, for giving instructions as to the operation of its products (cooking devices known as "Broasters"), for the servicing of equipment made by it, or for any other purpose. The Broaster sold to a distributor in Louisiana having exclusive right of resale in Alabama was alleged to have been defective and dangerous. The court, relying on *Emerson*, distinguished other Alabama cases, including Boyd v. Warren Paint and Color Co., supra, and New York Times v. Sullivan, supra. The opinion states:

"The Alabama statute requires the doing of business or the performing of work or service in the state in order to permit substituted service. We need not consider whether a broader statute would withstand a challenge on constitutional grounds. We are not dealing with a statute that authorizes substituted service of process in an action for a tort committed in the state. Thus we do not consider whether the tort alleged was committed, if at all, in * * * Alabama. There being no contractual relationship * * *, such cause of action as might exist would sound in tort. It is a fruitless search which seeks to find in the facts of this case those minimum contacts which must be present for [defendant] Company to be doing business in Alabama so as to subject it to the jurisdiction of a district court sitting in Alabama upon the constructive service

sions, using the services of other compensated Alabama correspondents regularly, distributing its newspapers in the state through mail to subscribers and by sales

through distributors and dealers in the state, and by solicitation and sales of advertising by agents sent into the state by the Times or its subsidiary.

provided by the Alabama statute."
326 F.2d at 945–946.

We do not decide whether the challenged service offends the Federal Constitution. We hold only that the present fact situation does not permit substituted service of process in Alabama under the law of the forum state.

The judgment is

Affirmed.