**Philip HALES, Plaintiff,**

v.

**FIRST APPALACHIAN CORPORATION, South African Iron & Steel Industrial Corporation, Ltd., Defendants.**

No. C.A. 77–M–581.

United States District Court, N. D. Alabama, S. D.

July 30, 1980.

---

R. Ben Hogan, Hogan, Smith & Alspaugh, Birmingham, Ala., Roger Killian, Fort Payne, Ala., Robert H. King, Gadsden, Ala., for plaintiff.

Charles A. McGee, Traylor, Baker & McGee, Fort Payne, Ala., T. Thomas Cottingham, Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, Ala., Kenneth L. Everett, Rogers, Hoge & Hills, New York City, for defendants.

## MEMORANDUM OPINION

McFADDEN, Chief Judge.

This diversity suit was originally commenced by plaintiff, a citizen of Alabama, against First Appalachian Corporation (FAC) to recover money for the sale of coal pursuant to written contract.

Two years after the complaint was filed, plaintiff amended to add ISCOR as a party defendant, alleging a direct contractual arrangement with this defendant. Plaintiff claims that ISCOR, acting through FAC, agreed to buy coal from plaintiff. Plaintiff also alleges claims for conversion, for goods had and received, and on open account.

This cause is before the court on the alternative motion of defendant ISCOR to dismiss, for judgment on the pleadings or for summary judgment. ISCOR claims that plaintiff has failed to state a claim

upon which relief can be granted and that this court lacks jurisdiction over the person of this defendant.

The facts as revealed in the pleadings and affidavits are not in dispute.

In April 1976, ISCOR published its intent to purchase a quantity of coal and invited tenders. In May 1976, counsel for the plaintiff sent a response to ISCOR's notice. ISCOR sent four representatives to the United States to visit eight sources selected from the responses received. These representatives came to Birmingham, Alabama, on June 24, flew to Ft. Payne, inspected a coal tipple and two mines, took a sample of coal from one mine, flew to Mobile to inspect the State docks, and returned to Birmingham, all on the same day. These representatives remained in Birmingham on June 25, 1976 inspecting laboratories, visiting a coal operation and visiting a barge operation.

On June 26, 1976, the group left Alabama, returning on June 28 to Ft. Payne, Alabama, where they visited a laboratory and washery and took additional samples of coal, returning to Birmingham that evening. On June 29, 1976, barge loading facilities on the Warrior River were visited; on June 30, coal facilities in the Jasper area were visited. The group left Alabama on July 1.

After visiting several other United States cities, the group traveled to Washington, D. C. on July 8, 1976. On July 14, 1976, a contract was signed in Pittsburgh, Pennsylvania by A. R. Black, President of FAC, and A. D. Schoeman, Materials Manager of IS-COR. Under this contract and pursuant to subsequent correspondence FAC agreed to have certain coal delivered to the Mobile dock in August, 1976. ISCOR nominated a vessel which picked up coal delivered to Mobile by FAC.

After the coal was in route to South Africa it was determined that it did not meet contract standards. Subsequently, IS-COR and FAC negotiated an agreeable price for the inferior quality coal. Payment was made in accordance with this agreement.

After ISCOR had entered into a contract with FAC, the plaintiff's attorney continued to correspond with ISCOR indicating a continued desire to sell coal to ISCOR. On July 27, the plaintiff was notified by letter that he would not be awarded a contract by ISCOR.

On August 6, 1976, FAC entered into a separate contract with plaintiff for the sale of 48,000 metric tons of coal at $46 per ton. This contract incorporated by reference the contract, dated July 14, 1976, between FAC and South African Iron and Steel Industrial Corporation (ISCOR) for the sale of 45,000 metric tons of coal at $49 per ton. The Hales-FAC contract was for the same coal FAC had sold to ISCOR. Hales in the contract with FAC undertook to perform all of FAC's obligations to ISCOR in the earlier contract with certain exceptions. This was not known to ISCOR.

The initial question is whether this activity is sufficient to give the court *in personam* jurisdiction over defendant IS-COR. Normally, the question of jurisdiction is determined first before there is any treatment of the merits of a claim, although a court may receive evidence limited to jurisdictional matters. *Bickham v. Miller*, 584 F.2d 736 (5th Cir. 1978). Here, however, the two issues are intertwined. Defendant ISCOR contends that on the undisputed evidence there was no contract and therefore no jurisdiction. ISCOR also claims that since there was no contract, it is entitled to summary judgment even if the court has jurisdiction. This requires an examination of the merits of the claims put at issue by the motion for summary judgment.

On a motion for summary judgment, the burden is initially upon the moving party to establish that there is no genuine issue as to any material fact. The movant's evidence may be in the form of affidavits and is strengthened by the use of documents. In fact, where the movant supports his motion with affidavits and documents evidencing a high degree of credibility, the opponent must produce convincing proof attacking the documents in order to defeat

the motion. 10 Wright & Miller, *Federal Practice and Procedure*, § 2727. If the movant makes out a *prima facie* case that would entitle him to a directed verdict if uncontroverted at trial, summary judgment must be granted unless the opposing party offers some competent evidence that could be presented at trial showing that there is a genuine issue as to some material fact. *First National Bank of Arizona v. Cities Service Company,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

██ Where the moving party has made out a *prima facie* case showing that there are no genuine factual issues and that he is entitled to summary judgment as a matter of law, the burden of producing evidence shifts to the opposing party which must meet this burden with affidavits setting forth specific facts to show why there is an issue for trial. *Gossett v. Du-Ra-Kel Corporation,* 569 F.2d 869 (5th Cir. 1978). The opposing party does not meet his burden merely by asserting in the pleadings or even by affidavit that a genuine issue exists for trial. *United States v. Hodnett,* 347 F.Supp. 1018 (M.D.Ala.1972). He cannot meet his burden by stating general assertions or legal conclusions, *Liberty Leasing Co., Inc. v. Hillsum Sales Corp.,* 380 F.2d 1013 (5th Cir. 1967), nor is he entitled to a trial on the basis of a hope that he can produce some evidence at that time. *DeBardeleben v. Cummings,* 453 F.2d 320 (5th Cir. 1972). Neither frivolous assertions nor unsupported statements nor illusory issues nor mere suspicions will suffice to justify a denial of summary judgment. The court may disregard evidence that is too incredible to be believed. The evidence offered by the opposing party must be admissible at trial and must have the force needed to allow a jury to rely on it.

In *DeBardeleben v. Cummings, supra,* the Fifth Circuit affirmed the granting of summary judgment by the trial court and said:

Summary judgment, often thought to be unavailable, *is* once again proved to be a valuable tool in the law's effort to stem the tide of flooding litigation. The parties are not to be trapped into waiving a plenary trial on issues that really exist. But neither is the Judge, the opposition nor the jurisprudence to be trapped by feigning an issue, so non-existent as to be unrealized by combatting adversaries, in order to require a trial not on substantial issues but on ones that at most were merely not expressly negated and at best involved only 'the optimistic hope that something might turn up.' *Bruce Construction Corp. v. United States,* [5 Cir.] supra, 242 F.2d [873] at 878. Such an approach is a distortion of the whole spirit of F.R.Civ.P. 56.

453 F.2d at 326–327 (emphasis added).

██ Mr. Schoeman's uncontroverted affidavit and the documents attached thereto establish conclusively that there was no contract between ISCOR and plaintiff; that ISCOR does not owe plaintiff any money by reason of an open account; that ISCOR does not owe plaintiff money for goods had and received; and that ISCOR has not converted to its own use any coal belonging to plaintiff. Hales has not produced any evidence raising any material issue of fact. The material facts stated in Mr. Schoeman's affidavit are not disputed and are due to be taken as true.

Plaintiff has offered general assertions which, without more, cannot be held to show genuine issues of material facts. The motion for summary judgment is therefore due to be granted. The court is further of the opinion that because there was no contract there is no jurisdiction over this defendant.

The issue of *in personam* jurisdiction logically must be determined according to a two step analysis. In *Walker v. Newgent,* 583 F.2d 163 (5th Cir. 1978), the court stated:

In deciding whether the state jurisdictional statute confers jurisdiction over a nonresident defendant in a diversity suit, it must be determined that (1) the defendant is in fact amenable to service under the statute (state law of the forum controls this question), and (2) if the state statute has been complied with, then federal law must be applied to determine

whether assertion of jurisdiction over the defendant comports with due process. *Jetco Electronic Industries, Inc. v. Gardiner*, 473 F.2d 1228 (5th Cir. 1973); *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974); *Wilkerson v. Fortuna Corp.*, 554 F.2d 745 (5th Cir. 1977).

583 F.2d at 166.

■ However, under Alabama Rule of Civil Procedure 4.2(a)(2)(I) as presently interpreted by the Alabama Supreme Court, the personal jurisdictional issue seems to be a single question, *i. e.*, whether federal due process standards have been met. This, in my judgment, is in error. Notwithstanding, I am duty bound to follow the decisions of the Alabama Supreme Court. I do think, however, I should note in some detail why I think the analysis is wrong.

The confusion starts with Alabama Rule of Civil Procedure 4.2, which in pertinent part states:

PROCESS: BASIS FOR AND METHODS OF OUT–OF–STATE SERVICE

(a) Basis for Out-of-State Service.

(1) *When Proper.* Appropriate basis exists for service of process outside of this state upon a person in any action in this state when:

(A) the person is, at the time of the service of process . . . a nonresident of this state . . .

(B) the person has sufficient contacts with this state, as set forth in subdivision (a)(2) of this rule, so that the prosecution of the action against the person in this state is not inconsistent with the Constitution of this state or the Constitution of the United States, . . .

(2) *Sufficient Contacts.* A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's:

(A) transacting any business in this state;

\* \* \* \* \* \*

or

(I) Otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirement of subdivisions (A)–(H) of this subsection (2), so long as the prosecution of the action against a person in this state is not inconsistent with the Constitution of this state or the Constitution of the United States.

The Rules Committee justified its reasoning in enacting the revised long-arm procedure of Rule 4.2 as follows:

The threshold problem facing the Committee was the validity of a redefinition of the bases for permissible "long-arm" service of process under the exercise of rule-making power. *The Rules Enabling Act (Acts of Alabama, No. 1311, Regular Session, 1971) do [sic] not authorize the abridgement, enlargement or modification of the substantive right of any party.* After much discussion, a majority of the Committee has concluded that an overhaul of the rule governing service of process can properly include a redefinition of the bases for permissible "long-arm" service of process without further legislative or constitutional authority than that which presently exists under the Rules Enabling Act and Sec. 150 of the *Constitution of Alabama of 1901, as amended 1973.*

Ala.R.Civ.P. 4, Committee Comments, at 28–29 (1977) (emphasis added).

The Committee then noted:

A large part of the confusion has resulted from the "doing business" language in the Sec. 199(1), coupled with judicial pronouncements that Sec. 199(1) was as broad as the due process clause allowed. When considering this revised rule, some members of the Committee felt that the adoption of ARCP 4.2(a) would constitute an expansion of *in personam* jurisdiction of Alabama courts, and therefore was without the authority of the enabling act. However, other members of the Committee and the final consensus of the Committee was that

since the Alabama Supreme Court had twice stated and the Fifth Circuit has at least four times recognized, that Sec. 199(1) is as broad as the permissible limits of due process, justification for revamping this important area of Alabama law by rule existed and revision would be undertaken.

*Id.* at 36. The Committee comments further state:

> This subparagraph (I) is but a restatement of the current definition of the federal constitutional standard. . . . Subparagraph (I) was included by the committee to insure that a basis of jurisdiction was included in Alabama procedure that was coextensive with the scope of the federal due process clause, as *New York Times v. Sullivan,* [273 Ala. 656, 144 So.2d 25 rev. 376 U.S. 254, 84 S.Ct. 710, 95 L.Ed.2d 1412] *supra,* indicated is allowable in Alabama.

*Id.* at 37.

This court is of the opinion that Rule 4.2, as the Committee noted, was effective only to the extent that it codified existing law. Under the law existing at the time the Rules were adopted, the limits of due process were not the only restraints on personal jurisdiction. There first had to be a statutory basis for subjecting the nonresident to the jurisdiction of the courts. Then there had to be an examination of the due process question to see if the statutory basis for jurisdiction as applied violated due process. The test in my judgment should continue to be so.

The Rules Committee could only enact procedural changes, but the result has been a substantive change in the guise of merely codifying what was already the law. The Committee clearly understood, as noted above, that it could not make substantive changes and justified its actions on the ground that it was only restating existing law. The mistake was in assuming that under the then existing law, the long-arm statute was as broad as due process.

The old statute [Title 7, § 199(1)] provided that if a foreign corporation not qualified to do business in this State "shall do any business or perform any character of work or service in this state," it shall be subject to service of process through the Secretary of State "in any action accrued, accruing, or resulting from the doing of such business, or the performing of such work or service, or relating to or as an incident there[of]." It is apparent that the provision required a connection between the cause of action and the doing of business, the performing of work, or performing of service in Alabama.

This clearly involved more than a "single-step" analysis, based on the limits of constitutional due process. In *Barrett v. Browning Arms Co.,* 433 F.2d 141, 143 (5th Cir. 1970), the court stated:

> As recognized by the appellant, there is no constitutional obstacle to subjecting Browning to the jurisdiction of the Alabama courts under the theory that the defendant committed a tort within that state; however, *the jurisdiction so imposed can extend no further than the statutory base provided for by the forum state.* (Emphasis added.)

In *Barrett,* the issue was not "whether the statutory procedures providing for in personam jurisdiction over nonresidents comport with constitutional due process requirements"; rather, the question was solely "whether the defendant is amenable to service of process under the admittedly valid Alabama statutes." *Barrett v. Browning Arms Co.,* 433 F.2d at 142. Barrett's case recognizes that if there is to be a single-step analysis, the issue it presents is not constitutional due process, but the reach of the Alabama long-arm statute. If the statute itself does not provide for the attempted service, the due process question is never reached. If the statute provides for the service sought, then it must be tested against the due process requirements.

The Rules Committee has omitted the first step and has gone to the second. In doing so, the Committee relied heavily on *Sells v. International Harvester Co., Inc.,* 513 F.2d 762 (5th Cir. 1975). *Sells* cites as its authority *King & Hatch, Inc. v. Southern Pipe & Supply Co.,* 435 F.2d 43 (5th Cir.

1970); *In re Martin* (actually *"Ex parte Martin"*), 281 Ala. 135, 199 So.2d 836 (1967); *New York Times Co. v. Sullivan*, 273 Ala. 656, 144 So.2d 25 (1962), *rev'd on other grounds* 376 U.S. 254, 84 S.Ct. 710, 95 L.Ed.2d 1412 (1963); and *Boyd v. Warren Paint & Color Co.*, 254 Ala. 687, 49 So.2d 559 (1950). These cases, without analysis, state that the Alabama long-arm statute noted above "is as broad as the permissible limits of due process," and each relies on other cases as authority for this statement.

*King & Hatch, Inc.* relies on *In re Martin*, *Sullivan*, and *Boyd*. *In re Martin* relies on *Sullivan*. *Sullivan*, in turn, relies on *Boyd* and *Ex parte Emerson*, 270 Ala. 697, 121 So.2d 914 (1960). And *Boyd* relies on *Ford Motor Co. v. Hall Auto Co.*, 226 Ala. 385, 147 So. 603 (1933), and *St. Mary's Oil Engine Co. v. Jackson Ice & Fuel Co.*, 224 Ala. 152, 138 So. 834 (1932). The three authorities—*Ex parte Emerson, Ford Motor Co.*, and *St. Mary's Oil Engine Co.*—have been taken as the foundation for the statement that the Alabama long-arm statute in issue here "is as broad as the permissible limits of due process," and thereby sustaining the conclusion reached in *Sells*, 513 F.2d at 763, and *King & Hatch, Inc.*, 435 F.2d at 44:

> The Supreme Court of Alabama has consistently recognized that the issue of jurisdiction pursuant to substituted service of process under Alabama's long-arm statute is not controlled by state law but rather poses a federal question of whether subjection of the nonresident defendant to the sovereignty of Alabama comports with federal due process.

The argument is that since the Alabama long-arm statute in issue here "is as broad as the permissible limits of due process," then the validity of service of process is determined by exclusive reference to due process standards, with no reference at all to the reach of the State long-arm.

Careful analysis of these cases, in this court's judgment, does not support the reliance placed on them. According to *St. Mary's Oil Engine Co.*, 224 Ala. at 155, 138 So. at 836:

> The law is well settled that to sustain an action against a nonresident in the state court, the court must have jurisdiction of . . . the person, acquired by service of process authorized by the statutes of the state, and consistent with due process under the Fourteenth Amendment of the Federal Constitution.

*Ford Motor Co.*, too, is to the same effect. Like *St. Mary's Oil Engine Co.*, it emphasizes the dual requirements of statutory sufficiency and constitutional validity. Neither case is authority that the former is coextensive with the latter. Indeed, since each of the two requirements is kept clearly in view, the indications are to the contrary.

In *Ex parte Emerson*, service of process upon a nonresident manufacturer of an allegedly noxious medical product was quashed. The damage had occurred within Alabama, but the court found that nothing had been done in the State to satisfy the long-arm statute, §·199(1) of Title 7, Code of Alabama, and did not reach the constitutional question. *Ex parte Emerson* was followed in *Davis v. Casco Products Corp.*, 381 F.2d 470 (5th Cir. 1967), and again in *Tetco Metal Products, Inc. v. Langham*, 387 F.2d 721 (5th Cir. 1968). In each case, the analysis in *Ex parte Emerson* was adopted, and a decision was reached on the basis, not of constitutional validity, but of statutory sufficiency. The statute was in each instance found insufficient to support service of process.

In *Davis*, the Fifth Circuit remarked that "While the opinion" in *Sullivan* "states that 'the scope of . . . substituted service is as broad as the permissible limits of due process,' the court cites *Ex parte Emerson* . . . and *Boyd* . . . as authority for this statement." 381 F.2d at 471–72. This indicates that the court in *Davis* entertained reservations born of the infirmity of *Sullivan*'s antecedents to support the quoted statement. But the point to note about *Ex parte Emerson, Davis, Tetco Metal Products, Inc.* and *Barrett* as well is that each case involved the accrual in Alabama of a right of action arising, except for the element of damage, from a cause of action

that developed outside the State, and that in each case service of process was disallowed on the basis, not of constitutional invalidity, but of statutory insufficiency.

From this it follows that the Alabama long-arm prior to Rule 4.2 did not extend to the permissible limits of due process and consequently the Rule also validly does not.

It would seem that what was meant by the limits of due process holdings is that the statute *within its terms* is designed to go as far as due process will allow. Should the statute be too broad for due process constraints, then service may be had only to the extent due process standards are not violated. The statute was to be applied to the extent it was consistent with due process. This is quite different from saying the statute has no meaning and we look only to due process.

In my judgment, the statement that the long-arm statute extended to the limits of due process was incorrect at the time it was made, and on each repetition, if it was meant to be interpreted as permitting the express terms of the statute to be ignored. It would seem the court in *Sells* and the other cases at least impliedly found the necessary contacts to comply with the statute and felt it only necessary to address the constitutional question.

However, the Supreme Court of Alabama views the matter in a different light, and has abandoned the two-step process. In *Semo Aviation, Inc. v. Southeastern Airways Corp.*, 360 So.2d 936 (Ala.1978), the court said:

> Until quite recently, an analysis of this question would have, as Semo defendants suggest it still does today, consisted of a bifurcated inquiry. Initially, a court would decide if assertion of *in personam* jurisdiction over a non-resident defendant was authorized by the terms of the statute. If a court decided it was not so authorized, the inquiry would be ended, and the court would not assert jurisdiction. E. g., *New York Times Company v. Conner*, 291 F.2d 492 (5th Cir. 1961). Under this analysis, the question would often revolve around the issue of whether the defendant was "doing business" in Alabama or whether his action "accrued" here. *See id.* If, on the other hand, the assertion of jurisdiction was proper under the terms of the statute, a court would then decide whether the assertion of jurisdiction violated due process. *See id.; Elkhart Engineering Corp. v. Dornier Werke*, 343 F.2d 861 (5th Cir. 1965).

More recently, however, this Court as well as the Fifth Circuit has eschewed this two-step inquiry and has instead held that the scope of substituted service under the statute is as broad as the permissible limits of due process. *DeSotacho, Inc. v. Valnit Industries, Inc.*, 350 So.2d 447 (Ala.1977); *Schoel v. Sikes Corp.*, 533 F.2d 930 (5th Cir. 1976). The rationale is now officially sanctioned by Rule 4.2, A.R.C.P., which brings together the various Alabama "long-arm" statutes into one rule. *See* "Committee Comments" to Rule 4.2.

\* \* \* \* \* \*

> [T]he issue becomes, from the outset, whether the assertion of jurisdiction over the defendants violates due process. Thus, Alabama may assert jurisdiction over nonresident defendants if they have sufficient "minimum contacts" with this state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). . . .

360 So.2d at 938–39.

It is my judgment that the Alabama Supreme Court has approved action by the Rules Committee which changed the substantive law. This was beyond the power of the Committee. Clearly where there was once a two-step process, as noted by the Court in *Semo*, the jurisdictional issue is now reduced to the single question of federal due process standards. It is this court's duty to follow the decision of the Alabama Supreme Court on this issue despite my firm conviction that it is incorrect.

The court is of the opinion, however, that this court may not exercise jurisdiction even under the one-step process.

■ Due process requires that the defendant receive reasonable notice of the action. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313–14, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950). It also requires some "minimum contacts" with the forum state which result from affirmative action of the party sought to be joined. *Kulko v. Superior Court of California*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978).

In *Kulko, supra*, the Supreme Court restated the due process standard:

> [T]he constitutional standard for determining whether the State may enter a binding judgment against appellant here is that set forth in this Court's opinion in *International Shoe Co. v. Washington, supra*, that a defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. 154.

436 U.S. at 92, 98 S.Ct. at 1697. Such a standard requires a balancing test and may not be mechanically applied.

ISCOR's contacts with plaintiff all occurred on one day, June 24, 1976, and it is clear beyond doubt that those contacts did not end in a contract, notwithstanding plaintiff's assertion that a contract existed between plaintiff and this defendant which makes this defendant amenable to the jurisdiction of this court. It is alleged that defendant ISCOR acting through FAC entered into a contract with plaintiff. This is apparently based on plaintiff's contract with FAC which came into existence some three weeks after FAC and ISCOR entered into a contract for the sale of coal. The plaintiff-FAC contract was for the coal FAC was to supply to ISCOR, but ISCOR knew nothing of the arrangement and it is clear from the record that FAC was not acting as agent for either plaintiff or IS-COR. No contractual relationship existed between these parties.

It is true that ISCOR representatives had contact with others in Alabama but the court is of the opinion that the transaction of business for the purpose of Rule 4.2(a)(2)(A) of the Alabama Rules of Civil Procedure must relate to the cause of action asserted and may not be totally unrelated to the claims made. The court reaches this conclusion from reading the rule, which provides that "[a] person has sufficient contacts with the state when that person . . . is or may be legally responsible as a *consequence* of that person's transacting any business in this state." (Emphasis added.) Plaintiff's assertion of jurisdiction therefore must rest on the one day's contact with representatives of ISCOR, and come within Rule 4.2(a)(2)(I). In the court's opinion, it is unreasonable to subject this defendant to the jurisdiction of this court to defend a lawsuit based on this one day's activities which did not result in a contract.

■ The court is further of the opinion that the exercise of jurisdiction over this defendant would offend traditional notions of fair play and be contrary to the due process clause of the fourteenth amendment to the Constitution of the United States. *International Shoe v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). This defendant's connection with the State of Alabama and this plaintiff was an unsuccessful attempt to find a supply of coal. The contracts it eventually entered into were made elsewhere. This casual visit is insufficient in this court's judgment to subject this defendant to the jurisdiction of the court. This conduct did not involve purposeful conduct within the State so as to avail itself of the benefits and protection of Alabama laws. *Kulko, supra*.

In sum, the court finds that plaintiff has not carried his burden and established a basis for personal jurisdiction of this defendant.