**In re GHR ENERGY CORP., f/k/a Good Hope Refineries, Inc.,**

**and**

**GHR Pipeline Corp., f/k/a Southern Pipe Line Corporation, Debtors.**

**Nos. 84–03474–H1–5, 84–03475–H2–5.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

May 27, 1986.

H.S. Finkelstein, A. David Benjamin Finkelstein, Susan Raphael Finkelstein, Irrevocable Trust, Three Sisters Trust, Medallion Oil Co., Finkelstein Group: Paul P. Daley, Albert A. Notini, Hale & Door, Boston, Mass., Hugh M. Ray, J. Douglas Bacon, Andrews & Kurth, Frank Douglass, Morgan L. Copeland, Christopher Fuller, Scott, Douglass & Luton, Houston, Tex., for claimants.

Robert J. King, James M. Dash, John C. Nabors, J. Michael Dorman, Liddell, Sapp & Zivley, Houston, Tex., for debtor.

## MEMORANDUM OPINION

MANUEL D. LEAL, Bankruptcy Judge.

Came on for oral argument the Finkelstein group's motion for partial summary judgment on the liability aspect of their proof of claim which was filed on November 21, 1984. The issue is whether these debtors' are judicially precluded from challenging the underlying gas purchase agreement when they applied and obtained a court order allowing the debtor to reject the executory contract. We hold that the debtor is not precluded from raising the defense of lack of consideration under Texas law and that fact issues exist as to the alleged failure of consideration. In addition, res judicata and collateral estoppel would not operate to bar GHR from litigating the validity of Finkelstein's overriding royalty interest of El Paso Natural Gas in the Dolores & Corralitos subdivision in Zapata County, Texas because fact issues ex-

ist which are currently being litigated in adversary proceeding number 85–0946. Finally, this Court cannot rule that the "prevailing price", in and of itself, establishes Finkelstein's damages with reasonable certainty as a matter of law. Accordingly, the Finkelstein motion for summary judgment is DENIED.

## FACTS

Southern Pipe Line Corp. (predecessor to GHR Pipeline which is now Transamerica Pipeline Corp.) entered into a gas purchase contract with Finkelstein on October 1, 1974. Prior to this contract, the parties had entered into a letter agreement, dated January 24, 1974 in which GHR agreed to convey overriding royalty interests to Finkelstein in return for Finkelstein offering his leasehold properties to GHR. The letter agreement stated:

> The parties hereto agree and stipulate that the following described trades have already been submitted to Stanley by Finkelstein and they have agreed that in the event such trade is closed by Stanley, the overriding royalty interest to be assigned to Finkelstein, as to each of the following trades, is a fraction out of Stanley's net revenue interest as indicated by the fraction set opposite each trade, to-wit:
>
> Leases covering all or parts of the land or mineral interests owned by Lloyd M. Bentson, et al, El Paso Natural Gas Company, Jesse M. McNeel, in the Dolores Subdivision and the Corralitos Subdivisions in Zapata County, Texas....1/16th

This agreement was recorded in the public records of Zapata County on July 23, 1974.

On October 31, 1975 Pipeline & Energy filed voluntary petitions under Chapter XI of the Bankruptcy Act of 1898 in Massachusetts. On February 3, 1976, the U.S. Bankruptcy Court in Massachusetts entered three orders which related to the gas purchase contract and letter agreement. First, an order was signed which allowed the debtor to assume the gas purchase contract. The order stated that it relied on the facts alleged in debtor's motion to assume and recited:

> I find that the Debtors' ability to purchase natural gas pursuant to a contract with H.S. Finkelstein dated October 1, 1974, and to transport such gas for a fee, is desirable for the continued operation of the Debtors' respective businesses, and in the best interest of the Debtors and their creditors, would be in the ordinary course of business for the Debtors, and that execution of an agreement providing that the Finkelstein Group will waive any right it may have to terminate said contract by reason of the Debtors' having filed Chapter XI petitions, and also providing satisfactory assurances to the Finkelstein Group that the contract will remain in effect and that it will be paid for gas sold and delivered to the Debtors under said contract, will ensure a continuing supply of gas.

The application which the debtor filed with the bankruptcy court stated:

> Natural gas is presently in short supply, and the debtors believe that the contract, which provides a long-term source of such gas to the debtors at reasonable prices, is a valuable asset which would be lost were the Finkelstein Group to terminate the contract.
>
> 5. Gas purchased by the debtors from the Finkelstein Group is transported by pipeline by Southern, and is then in turn resold by Good Hope to Lo-Vaca Gathering Corporation ("Lo-Vaca") pursuant to existing contractual arrangements between the debtors and Lo-Vaca (the "Lo-Vaca contract").

Also incorporated into the order allowing assumption of the contract was an agreement which stated:

> 2. Pursuant to the authorization of the Bankruptcy Court referred to above, Southern and Good Hope as debtor-in-possession, each hereby ratifies and assumes the contract, as modified hereby, and each waives the right which it would otherwise have to reject the contract pursuant to the provisions of the Bankruptcy Act.

The second order granted the debtor the authority to execute assignments. This order stated:

1. The debtors have a valid and binding agreement with H.S. Finkelstein, pursuant to which, inter alia, the debtors have agreed to deliver to Finkelstein certain assignments more fully described in the application.

The third order approved the establishment of the "prevailing price" as that term is used in the contract. This order found that price to be fair and further stated:

1. It would be in the ordinary course of business of the debtor to fulfill the obligations incurred by it in the Gas Purchase Contracts signed by Southern Pipe Line Corporation on October 1, 1974 with H.S. Finkelstein.

Plans of arrangement were approved by the bankruptcy court in May, 1980.

On February 16, 1983 and January 26, 1983, GHR Pipeline and Energy respectively filed Chapter 11 petitions under the Bankruptcy Code of 1978. Almost a full year and a half later the debtor, GHR, filed an application to reject an executory contract with H.S. Finkelstein. An objection to the application was filed by the Finkelstein group. A hearing was held on September 25, 1984, evidence was taken. In the midst of the evidentiary hearing, a settlement was reached. An agreed order was submitted to the Court and signed on September 25, 1984. This order stated:

A hearing having been held on September 25, 1984 on H.S. Finkelstein, et al, verified emergency motion and motion for an emergency hearing concerning certain contracts with the debtors filed on July 20, 1984, and on the debtors' application to reject executory contract with H.S. Finkelstein filed on August 27, 1984, upon consideration of the pleadings, memoranda, and other papers filed by the parties and the testimony offered and evidence introduced at this hearing and the preliminary hearing held on August 29, 1984 it is hereby

FOUND:

1. That H.S. Finkelstein and Medallion Oil Company (hereinafter referred to as "Finkelstein") entered into an agreement with John R. Stanley. Good Hope Refineries, Inc. (n/k/a GHR Energy Corp.), and Gasland, Inc. (hereinafter collectively referred to as "GHR"), as of January 24, 1974, as supplemented and amended on October 1, 1984 (the "Contract").

2. Under the Contract GHR was to assign an overriding royalty interest in certain leases then existing and to be acquired in Webb and Zapata Counties;

3. That pursuant to the supplement to the Contract, on October 1, 1974 a gas purchase agreement was entered between Southern Pipe Line Corporation (n/k/a GHR Pipeline Corp.) and H.S. Finkelstein (the "Gas Purchase Agreement");

4. That H.S. Finkelstein and his assignees hold at the very least an overriding royalty interest in the gas produced under the leases covered by the Contract whether or not the Gas Purchase Agreement is rejected or deemed rejected;

and it is hereby ORDERED

1. That the debtors shall pay H.S. Finkelstein and his assignees each month the amount due to holders of royalty interests in the leases covered by the Contract from the date of this order.

2. That the debtors shall direct the Continental Illinois National Bank and Trust Company of Chicago to transfer from the royalty suspense account or the escrow account established pursuant to the order of this court dated September 10, 1984, an amount sufficient to pay H.S. Finkelstein and his assignees their allocable share due to holders of royalty interests in the leases covered by the Contract from May 1, 1984 through the date of this Order.

4. That the Gas Purchase Agreement be and hereby is rejected.

5. Paragraph 3 of the supplemental letter agreement dated January 24, between John R. Stanley and H.S. Finkle-

stein shall be interpreted with the terms of this agreed order.

6. That the debtors make an accounting to H.S. Finkelstein for all assignments due under the Contract and all royalty or purchase payments made under the contract from the commencement of this proceeding to this date and thereafter.

7. That H.S. Finkelstein shall file his claim for damages if any within sixty (60) days from the date of this order; the debtors shall have sixty (60) days thereafter to file any counterclaim against H.S. Finkelstein; each party shall cooperate with each other for any discovery required to file any claim or counterclaim.

[Signatures deleted.]

Debtor paid Finkelstein the amounts due under the override until early 1985. In 1985, GHR ceased making payments. Finkelstein commenced an adversary proceeding seeking damages and equitable relief caused by GHR's refusal to pay for the overriding royalty interest in the Dolores & Corralitos subdivision. GHR denies the override ever existed; that the interest which GHR acquired was not covered by the letter agreement because it was not the result of Finkelstein's trade and all payments made on account of this interest were made in error.

On November 21, 1984, Finkelstein timely filed a proof of claim in the amount of fifty three million dollars. GHR objected to the claim alleging it is "wholly without merit for the reason that the Contract which forms the basis of this claim was, from its inception, void for want of consideration and was, therefore, wholly unenforceable on its face". Second, GHR alleges Finkelstein's claim cannot include the overriding royalty interest in the El Paso Natural Gas Co. in the Dolores & Corralitos subdivision in Zapata County, Texas because Finkelstein did not acquire any interest pursuant to the agreement. Third, GHR argues that the "prevailing price" is speculative and the court should deny their claim because damages cannot be ascertained with the requisite specificity required.

Finkelstein has now moved for partial summary judgment on the liability aspect of their proof of claim. Finkelstein argues that GHR is precluded from attacking the consideration of the contract as well as the validity of their interest in the Dolores & Corralitos subdivision under principles of res judicata, collateral estoppel and judicial estoppel. Finkelstein also argues that the prevailing price is not speculative and the court can construe its meaning as a matter of law.

## LEGAL DISCUSSION

The bankruptcy court can properly issue a final order in this proceeding because Congress specifically provides that the "allowance or disallowance of claims against the estate ..." are core proceedings. 28 U.S.C. § 157(b)(2)(B)(1984); see generally *In Re Hinkley*, 58 B.R. 339, 343–44 (Bankr. S.D.Tex., 1986).

Federal Rule of Civil Procedure 56(c) provides:

> ... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts ...

judgment shall be rendered forthwith.

In determining whether summary judgment is appropriate the court must "look at the record in the light most favorable to ... the party opposing the motion ..." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). Accordingly, the Court must indulge all inferences favoring the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). If the court determines that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law, summary judgment is appropriate. *Transource International, Inc. v. Trinity Industries, Inc.*, 725 F.2d 274, 279 (5th Cir.1984).

■ It follows that the existence of a factual dispute does not necessarily preclude summary judgment. Rather, the court must initially determine the existence of an issue of fact which is both "genuine" and "material." A material issue of fact is one "which affects the outcome of the litigation." *Hahn v. Sargent,* 523 F.2d 461 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976); *Houston North Hospital Properties v. Telco Leasing, Inc.,* 688 F.2d 408, 410 (5th Cir.1982). An issue of fact is "genuine" if established by "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

It is well-settled that the moving party has the burden of showing the absence of a genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). If the movant presents credible evidence "that would entitle him to a directed verdict at trial, this evidence must be accepted as true on a motion for summary judgment when the party opposing the motion does not offer ... evidentiary material" bearing on the issue. Wright, Miller & Kane, *Federal Practice and Procedure; Civil 2d* § 2727 at 133–134 (1983); *Hales v. First Appalachian Corp.,* 494 F.Supp. 330 (N.D. Ala.1980); *see also Morris v. Prefabrication Engineering Co.,* 181 F.2d 23 (5th Cir.1950).

Rule 56 contemplates a shifting burden. If the moving party fails to discharge his initial burden, "summary judgment must be denied—even if the nonmoving party has not responded to the motion." *John v. State of Louisiana (Board of Trustees for State Colleges and Universities),* 757 F.2d 698, 708 (5th Cir.1985). Conversely mere allegations in the pleadings are insufficient to show a triable issue of fact where the movant has made a sufficient showing of the absence of a genuine issue of material fact. *Golden Oil Co. v. Exxon Co.,* 543 F.2d 548 (5th Cir.1976).

At the oral arguments on the Finkelstein motion, the Court handed the case of *In Re White Motor Corp.,* 44 B.R. 563 (N.D. Ohio 1984) to the parties. In this opinion, the U.S. District Court ruled that a debtor is precluded from "taking logically and legally inconsistent positions in order to deprive the other party to a valid contract from all rights deriving from that contract." Id. at 570. "By permitting the Trustee to raise defenses inconsistent with its prior finding that a valid contract was breached, the Bankruptcy Court skews the debtor-creditor balance of §§ 365 and 502 too far in the direction of the debtor, in violation of well-established principles of contract law." *Id.*

The facts in the *White Motor* case are substantially similar to our case. The debtor asked the court to permit it to reject an executory contract. An order was entered which found there to be a valid executory contract and permitted rejection. When the debtor objected to the claim, the claimant argued that the rejection of the contract constituted a breach under 11 U.S.C. § 365(g) and the only issue to be litigated was the amount of damages. The U.S. bankruptcy court rejected this argument and the district court reversed. The court reasoned that Congress' use of the word breach in § 365(g) as opposed to the use of the term "non-performance" used elsewhere in § 365 was a clear indication that the debtor cannot take an inconsistent position in terms of attacking the breach. The court held that the word breach has a plain meaning and § 502(b) should not be read so broadly that it "places a party damaged by a § 365 breach of an executory contract—a breach affirmatively sought by the debtor in the same position as any other prepetition claimant. This reading, urged by the trustee, has the effect of excising the word 'breach' from § 365(g)." *Id.* at 569. The district court further remanded the action to the bankruptcy court to determine "whether the debtor's breach of the ... contract entitled [the claimant] to partial summary judgment on the issue of liability under applicable state contract law." *Id.* at 570.

This case, while sound in theory, is difficult for the court to apply.

First, 11 U.S.C. § 365 is the mechanism in the code which provides a Chapter 11 debtor with quick relief from burdensome contracts. In the usual circumstance, forcing the debtor to object or preserve any right to challenge the underlying executory contract at the time of rejection would concentrate resources of the debtor on issues which cannot easily be grappled with during the hectic time at the commencement of a Chapter 11 case. In this case, however, this court does not have to contend with this policy consideration because the debtor did not apply to reject the contract in question until more than 1 year after the bankruptcy petitions were filed. Conversely, the principles of res judicata and collateral estoppel avoid multiple suits and determinations on "identical entitlements or obligations between the same parties, accompanied, as they would be, by the redetermination of identical issues of duty and breach." *Kaspar Wire Works v. Leco Engineering & Machine, Inc.*, 575 F.2d 530, 535 (5th Cir.1978).

Second, the precise mechanism by which the *White Motor* court based its decision is not expressly articulated—whether by res judicata, collateral estoppel, judicial estoppel or equitable estoppel. Integrating the reasoning of that case with the well established 5th Circuit case law in these areas clearly undermines the *White Motor* court opinion.

Our circuit has a three pronged test to determine the applicability of res judicata. "For a prior judgment to bar an action on the basis of res judicata, the parties must be identical in both suits, the prior judgment must have been rendered by a court of competent jurisdiction, there must *have been a final judgment* on the merits and the same cause of action must be involved in both cases." *Southmark Props. v. Charles House Corp.*, 742 F.2d 862, 869 (5th Cir.1984).

A careful review of all the orders entered in both the Act and Code case show that no notice was given of the pertinent motions and orders and they were basically either unopposed or agreed motions. Res judicata would not apply to these orders for the court did not resolve a contested matter with a decision on the merits. Wright, Miller & Cooper, *Federal Practice and Procedure Jurisdiction* § 4443 at 383 (1981).

▇▇▇ Issue preclusion requires a showing of 3 conditions. These are: (1) the issue to be concluded must be identical to that involved in the prior action; (2) in the prior action the issue must have been "actually litigated"; and (3) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment. *International Association of Machinists & Aerospace Workers v. Nix*, 512 F.2d 125, 132 (5th Cir.1975). As to the agreed order allowing rejection, this is governed by the rule of a consent judgment. For issue preclusion to apply to consent judgments, a court should determine the intention of the parties as reflected by the record and words of the agreement. The consent decree must contain "far-reaching preclusive language." *Southern Pacific Comm. Co. v. A.T. & T.*, 740 F.2d 1011, 1021 (D.C.Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985). It must be clear that the parties intended this stipulation of settlement to adjudicate once and for all the issues raised in that action. *Id.* The agreed order entered by this court on September 24, 1984 does not contain broad preclusive language or the requisite intent. As to the Act orders, there is no summary judgment evidence that these orders were the result of actual litigation. As such, collateral estoppel would not apply.

▇▇▇ We next move on to several theories which apply to this fact situation. Specifically these are equitable estoppel and judicial estoppel. Courts apply equitable estoppel to prevent a party from contradicting a position taken in a prior judicial proceeding. *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir.1982). Equitable estoppel enables a party to avoid litigating, in the second proceeding, claims which are

plainly inconsistent in the first proceeding. *Id.* The following two conditions must be met for equitable estoppel to apply. First, the party asserting the estoppel must be a party in the prior proceeding and that same party must have detrimentally relied upon his opponents prior position. *Id.* Since there is no summary judgment evidence before this court on Finkelstein's detrimental reliance on GHR's position, we cannot apply equitable estoppel as a matter of law.

■■ Judicial estoppel applies to a party who has successfully and unequivocally asserted a position in a prior judicial proceeding under oath; he is estopped from asserting an inconsistent position in a subsequent judicial proceeding. *Johnson Service Co. v. Transamerica Ins. Co.*, 485 F.2d 164, 174 (5th Cir.1973) Unlike equitable estoppel, judicial estoppel may be applied even if detrimental reliance or privity does not exist. Judicial estoppel is intended to protect the integrity of the judicial process; the object of the rule is to protect the judiciary, as an institution, from the perversion of judicial machinery. *Id.* This rule is directed against those who would "attempt to manipulate the court system through the calculated assertion of divergent sworn statements in judicial proceedings." *Id* at 175. The rationale of the doctrine is to "preserve the sanctity of the oath and the elimination of prejudice in the event that specific, calculated, and contradictory positions are taken in judicial proceedings. Such a rule does not allow for the resolution of ambiguities in favor of estoppel." *Id.*

This inquiry requires a look at the pleadings filed by the debtor and the orders entered by both Judges Glennon and Leal. The order allowing assumption states that it relies on the facts set out in the application to assume. Debtor expressly sets forth the consideration of the gas purchase contract in his motion to assume as outlined above. Since the debtor filed pleadings with the court which expressly detailed the bargain between the parties, he should be foreclosed from attacking this bargain in a subsequent suit.

However, our inquiry does not end at this point. Having reconciled the *White Motor* court decision as based on judicial estoppel, we must now look to Texas law to determine whether a judicial admission describing consideration forecloses the defense of lack of consideration by a party to the contract.

It is a basic tenet of Texas contract law that a breach of an agreement which does not contain consideration will not result in any injury which is susceptible of legal redress, since the breach cannot contravene any legal rights. *Micromanipulator Co. v. Bough*, 779 F.2d 255, 258 n. 5 (5th Cir. 1985); *Rio Grande Nat. Life Ins. Co. v. Faulkner*, 241 S.W. 2nd 468, 471 (Tex Civ. App.Dallas. 1951 writ. ref. n.r.e.) The defense of failure of consideration presupposes that there was consideration in the first instance, but that it later failed. *Martin v. Allman*, 668 S.W.2d 795 (Tex App. 5 Dist. 1984); *Nat'l Bank of Commerce v. Williams*, 125 Tex. 619, 84 S.W.2d 691, 692 (Tex.1935). Under this analysis, a fact issue exists as to the conduct of the parties in relation to the consideration expressed in the contract. It is for this reason that judicial estoppel is not an appropriate remedy for it would bar the debtor's evidence on the changed circumstances in reference to the expressed bargain.

■■ There is one exception to the rule that consideration must be present for any contract to be enforceable. The doctrine of promissory estoppel may permit a promisee to enforce a promise to do something in the future even if the promise is unsupported by consideration. *Wheeler v. White*, 398 S.W.2d 93, 96 (Tex.1966). For the doctrine to be available, there must be the existence of a promise designedly made to influence the conduct of the promisee, tacitly encouraging the conduct, which conduct is something that must be done by the promisee before he could begin to perform, and was a fact known to the promisor. *Wheeler v. White*, 398 S.W.2d 93, 96 (Tex.1966). Texas law also states that one cannot successfully plead want of consideration, or unilateralness, in a contract which he has per-

formed in whole or in part. *Matlock v. Data Processing Security, Inc.,* 607 S.W.2d 946, 948 (Tex.Civ.App.—Ft. Worth, 1980), *modified,* 618 S.W.2d 327 (Tex.1981) Finkelstein has not plead promissory estoppel, nor has he produced any summary judgment evidence on this issue or on the issue of performance by GHR. Therefore, lack of consideration can be raised by GHR and a fact issue exists as to the conduct of the parties.

■ As to Finkelstein's arguments relating to the validity of his interest in the Dolores & Corralitos subdivision, the same analysis would apply. The parties entered into an agreed order which does include the "far reaching preclusive language" discussed *supra* for collateral estoppel to apply to consent judgments. GHR stated unequivocally that "Finkelstein and his assignees hold, *at the very least* an overriding royalty interest in the gas produced under the leases covered by the contract." However, a fact issue has emerged as to whether this particular interest was covered by the contract. Specifically whether the lease interest was acquired by GHR from Finkelstein's trade or independently. This factual dispute mandates a denial of summary judgment on this issue.

As to the prevailing price issue, the parties entered into this agreement which was embodied in an order of the court. It is hornbook law that damages must be established with reasonable certainty. *Gulf Coast Inv. Corp. v. Rothman,* 506 S.W.2d 856, 858 (Tex.1974); *Patterson v. Poss & Sons,* 705 S.W.2d 301, 303 (Tex Civ.App.— San Antonio 1986)

Under Texas law:

> [r]easonable certainty as to the amount of damages is all that is required of the plaintiff and he need not show the amount of the loss or damage with mathematical exactness.... The rule is that if the evidence presented by the injured plaintiff is sufficient to afford a reasonable basis for estimating his loss, he is not to be denied a recovery because he is unable to prove the exact amount of the damages.

*L.C.L. Theatres v. Columbia Pictures Ind.,* 619 F.2d 455 (5th Cir.1980)

The prevailing price is defined as follows:

> [T]he average of the two (2) highest prices being paid on the day sixty (60) days prior to such January 1 for pipeline quality gas with due consideration being given to the quality and quantities involved, in the Railroad Commission of Texas District 4 as constituted on the date hereof under two (2) contracts, negotiated with two producers not affiliated with the purchasing pipeline. Such prices to be considered in the redetermination whether they are being paid as the result of initial price, escalating or redetermination.

Finkelstein Exh. A. (Gas Purchase Contract, p. 10 at para. 2.)

■ Damages can be recovered unless it can be said that at the time of entering such contract such damages were not in contemplation of the contracting parties. *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 562, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931); *Ivey v. Phillips Petroleum Co.,* 36 F.Supp. 811, 820 (S.D.Tex. 1941); *National Bank of Clebrune v. M.M. Pittman Roller Mill,* 265 S.W. 1024, 1025 (Tex Comm App 1924). Difficulty of assertaination does not prevent the recovery of damages. *Robey v. Sun Record Co.,* 242 F.2d 684, 690 (5th Cir.), *cert. denied,* 355 U.S. 816, 78 S.Ct. 20, 2 L.Ed.2d 33 (1957). As our Circuit has stated, "Contracts do not evanesce because of the perplexities in their construction, and there consequences cannot be ignored because of vexations in damage ascertainment." *Fujimoto v. Rio Grande Pickle Co.,* 414 F.2d 648, 656 (5th Cir.1969)

■ The U.S. Bankruptcy Court in Massachusetts found the prevailing price to be fair. In addition, there is no allegation by the debtor that the damages to be ascertained under the prevailing price formula were not contemplated by the contracting parties at the time the contract was entered into. While the Court feels confident that the prevailing price will be a sufficient

basis for estimating Finkelstein's loss, no summary judgment evidence was submitted from which this Court can ascertain the amount of loss with reasonable certainty. Therefore, a fact issue exists as to the evidence which Finkelstein will submit to establish his damages with reasonable certainty. Because of this, this Court cannot rule that Finkelstein has established his damages as a matter of law.

Having concluded that material fact issues exist, it is hereby ordered, that the Finkelstein's motion for partial summary judgment is DENIED.