518 So.2d 89 (1987)
Ruth Langston MacKINNON
v.
ST. LOUIS SOUTHWESTERN RAILWAY CO.
86-694.
Supreme Court of Alabama.
October 2, 1987.
Rehearing Denied November 25, 1987.
*90 Robert S. Ramsey and Charles J. Fleming of Ramsey, Flynn & Middlebrooks, Mobile, for appellant.
Jerry A. McDowell and Walter T. Gilmer, Jr. of Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, for appellee.
Walter R. Byars of Steiner, Crum & Baker, Montgomery, for amicus curiae CSX Transp., Inc.
MADDOX, Justice.
The sole issue presented in this appeal is whether St. Louis Southwestern Railway Company had sufficient minimum contacts with this state to authorize a circuit court in Mobile County to acquire in personam jurisdiction over it. The trial court determined that it did not have in personam jurisdiction and dismissed the case. We reverse and remand.
Ruth Langston MacKinnon filed this action in the Circuit Court of Mobile County against her employer, St. Louis Southwestern Railway Company ("St. Louis Southwestern"), under the Federal Employers Liability Act (FELA). MacKinnon alleged that she injured herself attempting to get out of her chair at St. Louis Southwestern's Shreveport, Louisiana, office where she was employed. St. Louis Southwestern filed a motion to dismiss, in which it claimed the Circuit Court of Mobile County *91 lacked personal jurisdiction over it and that venue was improper. After a hearing, the trial court granted the motion to dismiss, and entered an order stating that it granted the motion to dismiss because it found that it did not have personal jurisdiction over St. Louis Southwestern. MacKinnon appeals from that judgment.
St. Louis Southwestern incorporated under the laws of the state of Missouri and has its principal place of business in Tyler, Texas. St. Louis Southwestern is a wholly owned subsidiary of the Southern Pacific Transportation Company ("Southern Pacific"). Southern Pacific is incorporated under the laws of Delaware and has its principal place of business in San Francisco, California. St. Louis Southwestern is not qualified to do business in Alabama and has no statutory agent in Mobile.
St. Louis Southwestern does not own any railroad tracks, does not operate any trains in Alabama. Neither St. Louis Southwestern nor Southern Pacific had earnings, nor derived revenues, from any transportation business conducted in Alabama during 1983, 1984, 1985, or 1986. Southern Pacific leases an "off-line sales office" in Birmingham under the name Southern Pacific Transportation Company. The personnel of this office solicit freight business on behalf of St. Louis Southwestern and Southern Pacific. The sales personnel solicit the transportation of freight to be moved outside of Alabama through an interchange agreement with another railroad not related to St. Louis Southwestern or Southern Pacific. St. Louis Southwestern and Southern Pacific realizes revenue from this type of business once it is interchanged at some point outside of the state.
St. Louis Southwestern and Southern Pacific also have interchange trailer agreements with business entities for the interchange of trailers at points outside of this state. Under these agreements, a separate entity has the sole custody, control, and responsibility for an interchanged trailer. St. Louis Southwestern and Southern Pacific have no control over this separate entity.
All freight business solicited in Alabama is business that is interchanged to St. Louis Southwestern at some point outside of the state of Alabama. Freight is interchanged from another company, one totally unrelated to St. Louis Southwestern or Southern Pacific, and one over which St. Louis Southwestern and Southern Pacific have no control.
St. Louis Southwestern has not owned an interest in any property in Alabama in the past five years. It has not entered into any contract for the purchase or sale of merchandise within the state of Alabama during the past five years. It has not owned, leased, or otherwise maintained a warehouse or other storage facility or a truck and trailer storage, receiving, and shipping yard within the state of Alabama during the past five years. St. Louis Southwestern has not shipped any merchandise into or out of the state of Alabama on consignment during the past five years.
Because of these facts, St. Louis Southwestern contends that the trial court correctly concluded that it lacked in personam jurisdiction over St. Louis Southwestern. At first blush, it would appear the railroad is correct, but we conclude that the activities performed in Alabama do grant Alabama courts "in personam" jurisdiction over it.
A state's inquiry into the reasonableness of its exercise of jurisdiction over a nonresident foreign corporation must focus in each case on a qualitative analysis of the foreign corporation's contacts with the forum state. Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). In each case, personal jurisdiction "stands or falls on the unique facts of that case." Ex parte I.M.C., Inc., 485 So.2d 724, 725 (Ala.1986). Determining the full reach of jurisdiction necessitates weighing the facts of each case and precludes the use of "clear-cut jurisdictional rules" and "talismanic jurisdictional formulas." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 485-86, 105 S.Ct. 2174, 2189-90, 85 L.Ed.2d 528 (1985).
Rule 4.2(a)(2), Ala.R.Civ.P., sets forth a single-step analysis for determining questions *92 of personal jurisdiction: whether the assertion of jurisdiction meets federal due process standards. Duke v. Young, 496 So.2d 37 (Ala.1986); Semo Aviation, Inc. v. Southeastern Airways Corp., 360 So.2d 936 (Ala.1978). Specifically, Rule 4.2(a)(2)(I), Ala.R.Civ.P., provides:
"(2) Sufficient Contacts. A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's
"(I) otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirement of subdivisions (A)-(H) of this subsection (2), so long as the prosecution of the action against a person in this state is not inconsistent with the constitution of this State or the Constitution of the United States."
The due process clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant. Kulko v. Superior Court of California, 436 U.S. 84, 96 S.Ct. 1690, 56 L.Ed.2d 132 (1978).
The propriety of in personam jurisdiction is premised on the mandate that a nonresident defendant corporation have sufficient "minimum contacts" with this state. The judiciary has reiterated that, to satisfy due process, in order for a state to assert jurisdiction, a nonresident corporate defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984), quoting International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). As further announced by the United States Supreme Court, the ultimate tests of in personam jurisdiction are "reasonableness, fairness, and substantial justice." International Shoe, supra, 326 U.S. at 316, 66 S.Ct. at 158. Alabama courts have adopted this language. See Alabama Power Co. v. VSL Corp., 448 So.2d 327 (Ala.1984); Garrett v. Key Ford, Inc., 403 So.2d 923 (Ala. Civ.App.1981). This Court has also reiterated that the proper inquiry for determining if the maintenance of a suit offends constitutional due process centers on fairness and convenience, Mann v. Frank Hrubetz Co., 361 So.2d 1021 (Ala.1978). The "minimum contacts" requirement mandates "a balancing test and may not be mechanically applied." Hales v. First Appalachian Corp., 494 F.Supp. 330, 338 (N.D.Ala.1980).
This Court, in Alabama Waterproofing Co. v. Hanby, 431 So.2d 141 (Ala. 1983), stated the following:
"This state's long-arm procedure for service of process is not limited to rigid transactional categories. Instead, in personam jurisdiction of an Alabama court under Rule 4.2(a)(2), ARCP, is as broad as the permissible limits of due process. See DeSotacho, Inc. v. Valnit Industries, Inc., 350 So.2d 447 (Ala. 1977); Schoel v. Sikes Corp., 533 F.2d 930 (5th Cir.1976). See also Rule 4.2, ARCP, Committee Comments.
"In determining whether the nonresident appellants possessed sufficient contacts with this state for the trial court to obtain in personam jurisdiction, we must necessarily examine all the relevant facts and attendant circumstances of the case. J. Moore, 2 Moore's Federal Practice § 4.41-1[3] at 4-449."
431 So.2d at 145. The Hanby Court placed great value on the United States Supreme Court's analysis in World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). This Court agrees with the statement in World-Wide Volkswagen that "the foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. at 567, *93 quoted in Brooks v. Inlow, 453 So.2d 349, 357 (Ala.1984). This Court recently discussed the critical importance of the foreseeability test. In Duke v. Young, 496 So.2d 37, 39 (Ala.1986), this Court stated:
"Crucial to the analysis is the element of foreseeability of the consequences of the defendant's activities. There must be a clear, firm nexus between the acts of the defendant and the consequences complained of in order to establish the necessary contacts."
The Supreme Court explained in World-Wide Volkswagen that this "fair warning" requirement
"gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."
444 U.S. at 297, 100 S.Ct. at 567.
Considering the requirements of "minimum contacts," this Court stated in View-All, Inc. v. United Parcel Service, 435 So.2d 1198, 1201 (Ala.1983):
"[I]f there is a minimum of contacts, and the cause of action arises out of the contacts, it will normally be fair and reasonable to sustain jurisdiction. If there is a minimum of contacts and the cause of action does not arise out of the contacts, there will normally be no basis of jurisdiction, since it is difficult to establish the factors necessary to meet the fair and reasonable test."
MacKinnon contends that Congress has mandated that if St. Louis Southwestern has a corporate presence in Alabama, then in the absence of a statute precluding jurisdiction Alabama courts must be open to FELA plaintiffs attempting to sue it. The FELA "does not purport to require state courts to entertain suits arising under it." Missouri v. Mayfield, 340 U.S. 1, 71 S.Ct. 1, 95 L.Ed. 3 (1950). But Congress has established that a plaintiff may bring an action only in the following forums: where the cause of action arose; where the defendant resides; or where the defendant is doing business at the time of commencing the action. 45 U.S.C.A. § 56 (1986). In Miles v. Illinois Central R., 315 U.S. 698, 62 S.Ct. 827, 86 L.Ed. 1129 (1942), the Supreme Court established that "the permission granted by Congress to sue in state courts [on a claim arising under the FELA] may be exercised only where the carrier is found doing business." 315 U.S. at 705, 62 S.Ct. at 831 (emphasis added). The court in Miles restricted the forums within which a plaintiff may bring an FELA claim to those in which a railroad is actually doing business. 315 U.S. at 702, 62 S.Ct. at 829. "Doing business," as defined by the Supreme Court and other lower federal courts, "means actually carrying on railroading by operating trains and maintaining traffic offices within the territory of the court's jurisdiction." 315 U.S. at 702, 62 S.Ct. at 829 (emphasis added). The court in Fraley v. Chesapeake & O. Ry., 294 F.Supp. 1193, at 1203 (W.D.Pa.1969), noted that "[t]he legislative history indicates that Congress meant to enable suits to be brought wherever the railroad was... `actually carrying on railroading.'" (Emphasis added.)
We are aware that the mere solicitation of business, without more, does not confer jurisdiction in FELA cases, Green v. Chicago, B. & Q.R.R., 205 U.S. 530, 533-34, 27 S.Ct. 595, 596, 51 L.Ed. 916 (1907); People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 87, 38 S.Ct. 233, 235, 62 L.Ed. 587 (1918); Philadelphia & Reading R. v. McKibbin, 243 U.S. 264, 268, 37 S.Ct. 280, 281, 61 L.Ed. 710 (1917), but we are of the opinion that the defendant's business shown to have been done in Alabama in this case has more than mere solicitation, and is sufficient to invoke jurisdiction under FELA. In short, we are of the opinion that, under the facts of this case, and based upon later decisions of the Supreme Court of the United States on what constitutes the doing of business, the activity of St. Louis Southwestern in this state is sufficient to show that it was "actually carrying on railroading" in this state. For the above reasons, the judgment of the trial court is due to be, and it hereby is, reversed.
REVERSED AND REMANDED.
*94 JONES, ALMON, SHORES, BEATTY, ADAMS and HOUSTON, JJ., concur.
TORBERT, C.J., and STEAGALL, J., not sitting.

ON APPLICATION FOR REHEARING
MADDOX, Justice.
St. Louis Southwestern filed an application for rehearing, in which it makes four arguments: (1) that the opinion failed to follow well-established United States Supreme Court precedent in this FELA case; (2) that the opinion failed to set forth the salient facts that allegedly supported the Court's decision; (3) that the decision promulgates bad policy and casts an impermissible burden upon railroads that merely solicit business in Alabama; and (4) that this decision required St. Louis Southwestern Railway Company to litigate this FELA claim in Alabama in violation of federal due process standards.
We find that the arguments made by St. Louis Southwestern on rehearing are basically the same arguments that were made in its brief on appeal; therefore, we overrule its application for rehearing.
On rehearing, CSX Transportation, Inc. ("CSX"), a stranger to the litigation, has moved this Court, pursuant to Rule 29, Ala.R.App.P., for leave to file an amicus curiae brief. CSX states that this Court's opinion "could be misleading and could have a serious adverse effect upon this Court's correct interpretation and construction of forum non conveniens and subject matter jurisdiction over foreign FELA causes of action under § 6-4-430, Code of Alabama 1975, as amended by Act 87-182, Acts of Alabama 1987, which became effective on June 11, 1987." CSX asks this Court to clarify certain language in the opinion in this case. CSX states that the following language could be misleading: "The court in Fraley v. Chesapeake & O. Ry., 294 F.Supp. 1193, at 1203 (W.D.Pa. 1969), noted that `[t]he legislative history indicates that Congress meant to enable suits to be brought wherever the railroad was ... "actually carrying on railroading."'" (Emphasis added by this Court in its original opinion.)
Nothing contained in the original opinion of this Court should be construed as requiring state courts to exercise subject matter jurisdiction over an FELA claim arising out of an incident that occurred outside the State of Alabama involving a plaintiff who neither resides in nor is domiciled in Alabama. Missouri v. Mayfield, 340 U.S. 1, 71 S.Ct. 1, 95 L.Ed. 3 (1950). This suit did not involve the validity or application of the doctrine of forum non conveniens.
OPINION EXTENDED; APPLICATION OVERRULED.
JONES, ALMON, SHORES, BEATTY, ADAMS and HOUSTON, JJ., concur.
TORBERT, C.J., and STEAGALL, J., not sitting.