MADDOX, Justice
(dissenting).
This issue in this case is whether the Circuit Court of Mobile County had personal jurisdiction over a non-resident, defendant in a suit by his ex-wife to enforce and modify their Nevada divorce decree merely because he visited his children in Mobile and pays their tuition to attend a private school there.
Because I believe that this Court, in quashing the writ of certiorari as having been improvidently granted, fails to follow the law as set out in Kulko v. California Superior Court, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), and consequently deprives the petitioner of his due process rights guaranteed to him by the Constitution of the United States, I must respectfully dissent.
Although many of the basic facts are set out in the opinion of the Court of Civil Appeals, I believe a restatement of the pertinent facts would be helpful in explaining why I think that the “long arm” principle should not be applied in this case.
Judith Anne and William Allen Wells were divorced in Nevada on March 8, 1982. On December 18, 1985, Judith petitioned the Circuit Court of Mobile County to assume jurisdiction of the Nevada decree, enforce it in part, and modify it in part. William Wells was properly served by certified mail in Florida, where he was stationed with the U.S. Air Force. He failed to appear in the action, and the court rendered *609 judgment in favor of the wife. Approximately four and one-half months after the court entered its judgment, William sought relief from that judgment pursuant to Rule 60(b)(4), Ala.R.Civ.P., contending that the judgment was void for lack of in personam jurisdiction. The circuit court overruled his motion, and the Court of Civil Appeals affirmed.
The parties were married in San Antonio, Texas. During their marriage, the parties lived in Alabama on two occasions when William was transferred here by the military. The parties separated about 1979, and Judith moved back to Alabama. In 1982, William instituted a divorce action in Nevada. The divorce decree awarded custody of their two minor sons to Judith, granted her $250 per month (per child) in child support, and made William responsible for “any costs of tuition and related expenses incurred by [Judith] while said minor children are attending private schools in Mobile, Alabama.” William occasionally visited the children in Alabama. During these visits, William would move into Judith’s house with the children, and Judith would move out. Judith testified that his visits were usually just for a weekend, and in any event did not exceed five days.
In December 1985, Judith requested the Circuit Court of Mobile County to assume jurisdiction of all matters set out in the Nevada divorce decree, to hold William in contempt for failure to pay $980.84 representing school expenses of the children, and to increase the amount of child support from $250 to $500 per month. The circuit court agreed to assume jurisdiction, awarded the wife a judgment of $980.84 for school expenses, and increased the child support to $500 per month. The court also ordered William to pay $150 as a reasonable attorney fee.
On September 26, 1986, William filed the Rule 60(b) motion that is the subject matter on this appeal, in the Circuit Court of Mobile County. Judith had meanwhile filed garnishment proceedings against William in execution of her judgment. The trial court denied his motion, holding that William’s visits with his minor children were sufficient contacts with this state to give the court in personam jurisdiction. The Court of Civil Appeals affirmed, holding that Judith’s residence in Alabama prior to their divorce, together with the divorce decree’s mandate that William be responsible for the children’s school expenses “in Mobile, Alabama,” plus his occasional visitation with his children, were sufficient contacts to confer in personam jurisdiction.
The facts of the Kulko case are so similar that I believe it would be helpful to quote them just as Mr. Justice Marshall set them out in the Kulko opinion:
“Appellant Ezra Kulko married appel-lee Sharon Kulko Horn in 1959, during appellant’s three-day stopover in California en route from a military base in Texas to a tour of duty in Korea. At the time of this marriage, both parties were domiciled in and residents of New York State. Immediately following the marriage, Sharon Kulko returned to New York as did appellant after his tour of duty. Their first child, Darwin, was born to the Kulkos in New York in 1961, and a year later their second child, lisa, was born, also in New York. The Kulkos and their two children resided together as a family in New York City continuously until March 1972, when the Kulkos separated.
“Following the separation, Sharon Kul-ko moved to San Francisco, Cal. A written separation agreement was drawn up in New York; in September 1972, Sharon Kulko flew to New York City in order to sign this agreement. The agreement provided, inter alia, that the children would remain with their father during the school year, but would spend their Christmas, Easter and summer vacations with their mother. While Sharon Kulko waived any claim for her own support or maintenance, Ezra Kulko agreed to pay his wife $3,000 per year in child support for the periods when the children were in her care, custody, and control. Immediately after execution of the separation agreement, Sharon Kulko flew to Haiti and procured a divorce there; the divorce decree incorporated the terms of the *610 agreement. She then returned to California, where she remarried and took the name Horn.
“The children resided with appellant during the school year and with their mother on vacations, as provided by the separation agreement, until December 1973. At this time, just before lisa was to leave New York to spend Christmas vacation with her mother, she told her father that she wanted to remain in California after her vacation. Appellant bought his daughter a one-way plane ticket, and lisa left, taking her clothing with her. Ilsa then commenced living in California with her mother during the school year and spending vacations with her father. In January, 1976, appellant’s other child, Darwin, called his mother from New York and advised her that he wanted to live with her in California. Unbeknownst to appellant, appellee Horn sent a plane ticket to her son, which he used to fly to California where he took up residence with his mother and sister.
“Less than one month after Darwin’s arrival in California, appellee Horn commenced this action against appellant in the California Superior Court. She sought to establish the Haitian divorce decree as a California judgment; to modify the judgment so as to award her full custody of the children; and to increase appellant’s child-support obligations. Appellant appeared specially and moved to quash service of the summons on the ground that he was not a resident of California and lacked sufficient ‘minimum contacts’ with the State under International Shoe Co. v. Washington, 326 U.S. 310, 316, [66 S.Ct. 154, 158, 90 L.Ed. 95] (1945), to warrant the State’s assertion of personal jurisdiction over him.”
Mr. Justice Marshall was joined by Chief Justice Burger and Justices Stewart, Black-mun, Rehnquist, and Stevens. Justice Brennan filed a short dissent, in which Justices White and Powell joined, but in his dissent he pointed out that he could not say “that the Court’s determination against state-court in personam jurisdiction is implausible.”
The reason the Kulko decision is not “implausible” is that in it the Supreme Court of the United States, recognized that many of its decisions involving the use of the so-called “long arm” statutes or rules primarily deal with commercial cases or other cases in which a potential defendant derives some personal benefit from this activity in the forum state. In Kulko, the Court stated:
“The Due Process Clause of the Fourteenth Amendment operates as a limitation on the jurisdiction of state courts to enter judgments affecting rights or interests of nonresident defendants. See Shaffer v. Heitner, 433 U.S. 186,198-200 [97 S.Ct. 2569, 2576-2578, 53 L.Ed.2d 683] (1977). It has long been the rule that a valid judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant. Pennoyer v. Neff, 95 U.S. [(5 Otto)] 714, 732-733 [24 L.Ed. 565] (1878); International Shoe Co. v. Washington, 326 U.S. at 316 [66 S.Ct. at 158]. The existence of personal jurisdiction, in turn, depends upon the presence of reasonable notice to the defendant that an action has been brought, Mullane v. Central Hanover [Bank &] Trust Co., 339 U.S. 306, 313-314 [70 S.Ct. 652, 656-657, 94 L.Ed. 865] (1950), and a sufficient connection between the defendant and the forum State to make it fair to require defense of the action in the forum. Milliken v. Meyer, 311 U.S. 457, 463-464 [61 S.Ct. 339, 342-343, 85 L.Ed. 278] (1940). In this case, appellant does not dispute the adequacy of the notice that he received, but contends that his connection with the State of California is too attenuated, under the standards implicit in the Due Process Clause of the Constitution, to justify imposing upon him the burden and inconvenience of defense in California.
a # * *
“We therefore believe that the state courts in the instant case failed to heed our admonition that ‘the flexible standard of International Shoe does not *611 ‘heralfd] the eventual demise of all restrictions on the personal jurisdiction of state courts.’ Hanson v. Denckla, 357 U.S. [235] at 251 [78 S.Ct. 1228 at 1238, 2 L.Ed.2d 1283 (1958) ]. In McGee v. International Life Ins. Co., we commented on the extension of in personam jurisdiction under evolving standards of due process, explaining that this trend was in large part ‘attributable to the ... increasing nationalization of commerce ... [accompanied by] modern transportation and communication [that] have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.’ 355 U.S. [220] at 222-223 [78 S.Ct. 199, at 200-201, 2 L.Ed.2d 223 (1957)]. But the mere act of sending a child to California to live with her mother is not a commercial act and connotes no intent to obtain or expectancy of receiving a corresponding benefit in the State that would make fair the assertion of that State’s judicial jurisdiction.”
Because I do not believe that International Shoe applies to the facts of this case, I must respectfully dissent.
In order for a court of this state to acquire in personam jurisdiction over a nonresident individual, two requirements must be met. First, there must be a basis for the exercise of in personam jurisdiction consistent with the Due Process Clause of the Fourteenth Amendment. More specifically, the nonresident individual must have contacts with this state sufficient to make it reasonable and just for an action to be maintained against him. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Ex parte Volkswagenwerk Aktiengesellschaft, 443 So.2d 880, 884 (Ala.1983). Second, due process requires that the defendant be served with process in a manner that is “reasonably calculated to give him actual notice of the proceedings and an opportunity to be heard.” Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940).
Rule 4.2(a)(2), Ala.R.Civ.P., provides as follows:
“(2) Sufficient Contacts. A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person’s
[[Image here]]
“(I) otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirement of subdivisions (A)-(H) of this subsection (2), so long as the prosecution of the action against a person in this state is not inconsistent with the constitution of this state or the Constitution of the United States.”
Rule 4.2(a)(2), Ala.R.Civ.P. In personam jurisdiction under the above rule is “as broad as the permissible limits of due process.” Alabama Waterproofing Co. v. Hanby, 431 So.2d 141, 145 (Ala.1983). See also Rule 4.2, Ala.R.Civ.P., Committee Comments.
The “minimum contacts” standard for determining the existence of in personam jurisdiction does not lend itself to mechanical application. Kulko v. California Superior Court, 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978). “Determining the full reach of jurisdiction necessitates weighing the facts of each case and precludes the use of ‘clear-cut jurisdictional rules.’ ” MacKinnon v. St. Louis Southwestern Ry., 518 So.2d 89, 91 (Ala.1987), quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 486 at n. 29, 105 S.Ct. 2174, 2189 at n. 29, 85 L.Ed.2d 528 (1985). Reasonableness, fairness, and traditional notions of fair play and substantial justice provide the ultimate criteria by which jurisdiction is determined. Alabama Power Co. v. VSL Corp., 448 So.2d 327 (Ala.1984). The nonresident’s contacts must be such that he should “reasonably anticipate being hauled into court” in this state. WorldWide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). This fair warning requirement:
“gives a degree of predictability to the legal system that allows potential de *612 fendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.”
444 U.S. at 297, 100 S.Ct. at 567.
William Wells’s contacts with the state of Alabama are as follows: (1) his former wife is and has been a resident of this state since 1979, (2) he has visited his children in this state since the divorce in 1982, and (3) he is responsible under the terms of the divorce decree for his children’s private school tuition in Mobile.
Judith’s residence in this state is insufficient as a basis for the exercise of jurisdiction over her husband. As stated by the U.S. Supreme Court,
“The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant’s activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. International Shoe Co. v. Washington, 326 U.S. 310, 319, [66 S.Ct. 154, 160, 90 L.Ed. 95 (1945) ].”
Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-1240, 2 L.Ed.2d 1283 (1958). In Burrill v. Sturm, 490 So.2d 6 (Ala.Civ.App.1986), a divorced mother sought to increase the child support owed her under a Pennsylvania divorce decree. The Court of Civil Appeals held that the Alabama court lacked jurisdiction to entertain the suit where the ex-husband’s only contact with this state was the residence of his former wife and child.
Likewise, William Wells’s visitation with his minor children in this state will not suffice to confer in personam jurisdiction upon our courts. Otherwise, William would be amenable to suit wherever they happened to be residing. Thus, their residence, and not William’s purposeful contacts with this state, would determine our courts’ jurisdiction. Furthermore, “[t]o find personal jurisdiction in a State ... merely because the mother ... [is] residing there, would discourage parents from entering into reasonable visitation agreements.” Kulko v. California Superior Court, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed. 2d 132 (1978).
Likewise, the mere fact that William is responsible for the tuition and related expenses incurred by his children while they are “attending private schools in Mobile, Alabama” is insufficient as a basis for in personam jurisdiction. First of all, his obligation for the children’s school expenses would not “evaporate,” as appellee asserts in her brief, should the wife and children change their residence. The divorce decree specifically contemplates that the wife and children may not always live in Alabama:
“[I]n the event [Judith] and the minor children shall change their place of residence to a city other than Mobile, Alabama, then [William] agrees to negotiate with [Judith] with respect to the necessity of maintaining the said minor children in private schools; in the event [William] and [Judith] agree that private schooling for the minor children is mandated in a city other than Mobile, Alabama, then [William] agrees to negotiate with [Judith] with respect to the amount that [William] will pay to [Judith] as and for tuition and related expenses incurred by [Judith],...”
Furthermore, the children’s private schooling is not a “purposeful” contact with our state whereby William invoked for himself the “benefits and protections” of the laws of Alabama. See Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). The children’s private schooling is a benefit to the children, not to the father. In Kulko, the U.S. Supreme Court specifically rejected the argument that such a “benefit” to a child could inure to a nonresident father for purposes of in per-sonam jurisdiction, especially where that benefit was not purposefully sought by the father:
“The court below stated that the presence in California of [the nonresident father’s] daughter gave [him] the benefit of California’s ‘police and fire protection, its school system, its hospital services, its recreational facilities, its libraries and *613 museums_’ [Kulko v. Superior Court], 19 Cal.3d [514] at 522 [138 Cal. Rptr. 586 at 589], 564 P.2d [353] at 356 [ (1977) ]. But, in the circumstances presented here, these services provided by the State were essentially benefits to the child, not the father, and in any event were not benefits that [the father] purposefully sought for himself.”
Kulko v. California Superior Court, 436 U.S. 84, 94 at n. 7, 98 S.Ct. 1690, 1698 at n. 7.
If a child’s presence in a state school does not invoke the benefits of that state’s laws as regards a nonresident father, then, even more it would seem, a child’s presence in a private school would not invoke those benefits. In addition, there is no evidence in this case that the children’s private schooling in Mobile is a benefit that William “purposefully sought for himself.” Id.
Alabama’s strong interest in protecting the welfare of its resident children, standing alone, cannot support a finding of jurisdiction in this matter, either. We note, however, that Alabama’s interest in insuring the support of its resident children is being served under our enactment of the Uniform Reciprocal Enforcement of Support Act, Ala.Code 1975, § 30-4-80 et seq. This statute is designed to prevent the very type of jurisdictional dispute present in this case:
“[T]he Uniform Reciprocal Enforcement of Support Act ... [has] as [its] object the avoidance of jurisdictional competition and conflict with courts of other states....”
Trillo v. Trillo, 506 So.2d 1019, 1020 (Ala. Civ.App.1987).
“This act was designed to improve and extend the enforcement of duties of support and to make the support laws of adopting states uniform. [Citation omitted.] Basically, the civil proceedings authorized by the act are designed to provide a simplified, fair and convenient way to compel those who have a duty of support to fulfill their obligation without having to be extradited to another state.”
Ex parte O’Neill, 420 So.2d 264, 265 (Ala.1982).
All jurisdictions in the United States have adopted the Uniform Reciprocal Enforcement of Support Act (URESA) or legislation similar thereto. 31 A.L.R.4th 347, 351 (1984). Under URESA, Judith can obtain a judgment for William’s arrearages for school expenses. In addition, most courts assume that they have the power to issue prospectively a child support order different in amount from the one entered in the original divorce decree. 31 A.L.R.4th 347, 352 (1984). Thus, the majority of courts would be willing to order William to pay additional money in child support if additional need was shown to exist.
Even if the URESA procedure were not available to Judith, this Court cannot exercise in personam jurisdiction where it simply does not exist — no matter how appealing the exercise of that jurisdiction may be in any particular case. My dissent should not be understood as condoning William’s actions in failing to meet his obligation to support his children. I merely hold that we have not the power to order him to meet them.
Because of the foregoing, I must respectfully dissent.
TORBERT, C.J., concurs.