KENNEDY, Justice.
Frank Clemons, a longshoreman employed by Cooper/T. Smith Stevedoring Company, was injured while on board the M/V Sea Tiger when a bale of wood pulp fell from a sling and struck him. The Sea Tiger, a vessel owned and operated by Sitó-nos Shipping Company, had been chartered by Gearbulk, Ltd., and Toty Navigation Company, Ltd. Glafki (Hellas) Maritime Company acted as the shipping agent for the Sea Tiger. South African Stevedores, Ltd., loaded the wood pulp cargo aboard the Sea Tiger before the vessel left the port of Durban, South Africa.
On January 8, 1988, the Sea Tiger arrived in the port of Mobile, Alabama. Sven R. Fjellby, port captain for Gearbulk, Ltd., arranged for Cooper/T. Smith Stevedoring of Mobile to discharge the cargo of the Sea Tiger.
When the vessel arrived in Mobile, the cargo had been damaged. An independent cargo surveyor estimated that approximately half of the bales of wood pulp had damaged or broken baling wires and that *463 approximately 20% of the bales themselves were chipped, broken, or loose.
Gearbulk has established two methods for unloading the bales from the vessel. If there is no visible damage to the baling wires or to the bales, hooks attached to a crane are placed under each of the baling wires of a bale, and the crane then lifts the bale from the vessel. If the bales are obviously damaged, they are placed on a tray or pallet attached to the crane before being unloaded from the vessel. A bale of wood pulp being unloaded by the “hook” method fell from the crane and injured Clemons.
Clemons sued Glafki (Hellas) Maritime Company and Sikinos Shipping Company, alleging negligence. Clemons claimed that the method of unloading the wood pulp created a dangerous condition that caused his injuries. Clemons alleged that many of the bales had damaged baling wires that could not be seen on inspection and that when these bales were lifted by the hook method the wires broke, causing the bale to fall from the crane. Clemons’s wife sued for damages for loss of consortium. Toty Navigation Company, Ltd., and Gearbulk, Ltd., were added as defendants. Toty was never served with notice of the suit and is therefore not a party to this action.
The defendants filed a motion for summary judgment on January 27, 1989. The motion was denied on June 30, 1989. The defendants renewed that motion on October 3, 1989, and the court granted it on January 18, 1990. The court made that summary judgment final pursuant to Rule 54(b), A.R.Civ.P. on April 11, 1990.
While the January 27, 1989, motion for summary judgment was pending, Clemons added South African Stevedores, Ltd., as a defendant. Specifically, Clemons alleged that the cargo had not been properly stowed and secured, claiming that there was insufficient dunnage and blockage to prevent the cargo from shifting during transit. Clemons contended that this improper stowage resulted in damaged cargo that in turn caused his injuries. South African Stevedores filed a motion to quash service of process based on lack of personal jurisdiction. The court granted the motion on May 18, 1990.
On appeal, Clemons argues that the court erred in entering the summary judgment as to Gearbulk and Sikinos. The summary judgment as to Glafki, the shipping agent, has not been appealed. Clemons’s second argument is that it was error to dismiss South African Stevedores for lack of in personam jurisdiction.
As to the first issue on appeal, we note that a summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), A.R.Civ.P.; Sadie v. Martin, 468 So.2d 162 (Ala.1985). On review of a summary judgment, this Court.must view the evidence in a light most favorable to the nonmoving party. Tripp v. Humana, Inc., 474 So.2d 88 (Ala.1985).
First, we will review the Clemonses’ claim under the standards of care owed by a shipowner to a longshoreman first set forth in Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981).
“Scindia established three varying standards of care governing the relationship between the shipowner and the stevedore. First, prior to the onset of cargo operations, the shipowner owes the stevedore and its longshoreman the duty of exercising due care ‘under the circumstances,’ which includes having the ship and its equipment in reasonably safe condition and warning the stevedore of hidden dangers that are, or should be, known through the exercise of reasonable care. Scindia, 451 U.S. at 168, 101 S.Ct. at 1622. ... Second, once cargo operations are under way, the shipowner may be liable if it ‘actively involves itself in the cargo operations and negligently injures a longshoreman or if it fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation.’ Id. Third, also once cargo operations have commenced, and absent contractual, *464 legal or customary provisions to the contrary, the shipowner has no duty ‘to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore.’ 451 U.S. at 173, 101 S.Ct. at 1624. Scindia made it clear that once an owner has relinquished complete control of the vessel to the stevedore, primary responsibility for the safety of the longshoremen lies with the stevedore. However, if the shipowner learns of an apparently dangerous condition that presents an unreasonable risk or harm to the longshoremen, it has a duty to intervene and remove the hazard.”
Lampkin v. Liberia Athene Transport Co., 823 F.2d 1497, 1501 (11th Cir.1987) (footnote omitted).
Clemons contends that the first standard of care applies in this case to Sikinos, the shipowner, and Gearbulk, the charterer. That is, he contends that a duty is placed on the shipowner that includes having the ship and its equipment in reasonably safe condition at the time the ship is turned over to the stevedore. Clemons argues that the wood pulp cargo had been improperly stowed and loaded aboard the ship. He asserts that it is standard practice and procedure for the ship’s officer to approve the method and manner of stowage before the vessel leaves port. The ship’s officer, who is considered master of the vessel, can refuse to sail and can require the stevedore to correct the problem. Clemons contends that Sikinos and Gearbulk should have required the stevedore in South Africa (South African Stevedores) to stow the wood pulp properly and that Sikinos and Gearbulk did not properly inspect, supervise, or correct stowage and that the ship was unsafe at the time it was turned over to the stevedore in Mobile.
Clemons also argues that the third standard of care is applicable in this case. He contends that Gearbulk learned of an apparently dangerous condition that presented an unreasonable risk or harm to the longshoreman. Once Gearbulk knew of the dangerous condition, Clemons says, it had a duty to intervene and to remove the hazard. Clemons contends that the method of discharge created a dangerous condition. Clemons also contends that Gearbulk established this method and that the port captain in this case told Cooper/T. Smith Stevedores to use this method.
Cooper/T. Smith Stevedores had been unloading shipments of wood pulp for the past seven years. The former port captain for Gearbulk had established certain methods for discharging the wood pulp from its vessels. Clemons alleges that when the Sea Tiger arrived in Mobile, the port captain for Gearbulk, Capt. Fjellby, told the longshoreman to use the “tray” method on only the obviously damaged bales and to try the hook method on all other bales. Clemons argues that Gearbulk should have used the tray method on all the bales because, he says, Gearbulk knew of the extensive damage to the cargo. Clemons notes that the tray method is more expensive and time consuming.
Viewing the evidence in a light most favorable to the nonmovant, we find that there is a genuine issue of material fact and that the trial court erred in entering the summary judgment for the defendants. We reverse and remand for trial as to defendants Gearbulk and Sikinos.
The second issue is whether the trial court erred in dismissing South African Stevedores (hereinafter “SAS”) for lack of in personam jurisdiction. Clemons asserts that SAS negligently loaded the wood pulp bales aboard the Sea Tiger in South Africa and he argues that SAS had “sufficient contacts” with Alabama so that under Rule 4.2, A.R.Civ.P., SAS could be sued in Alabama.
In determining whether a nonresident defendant has sufficient contacts with this state, we must examine the relevant facts of each case. MacKinnon v. St. Louis Southwestern Ry., 518 So.2d 89 (Ala.1987). To establish in personam jurisdiction over a nonresident defendant, “the fundamental question is did the defendant act in such a manner that he reasonably ought to anticipate the direct consequences of his actions to be felt by another person *465 in another state?” Duke v. Young, 496 So.2d 37, 39 (Ala.1986). A nonresident defendant must have sufficient contacts with the forum state so as not to offend the traditional notions of fair play and substantial justice. MacKinnon, 518 So.2d at 92.
Rule 4.2(a)(2) reads:
“(2) Sufficient Contacts. A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person’s
“(A) transacting any business in this state;
“(B) contracting to supply services or goods in this state;
“(C) causing tortious injury or damage by an act or omission in this state including but not limited to actions arising out of the ownership, operation or use of a motor vehicle, aircraft, boat or watercraft in this state;
“(D) causing tortious injury or damage in this state by an act or omission outside this state if the person regularly does or solicits business, or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in this state;
“(E) causing injury or damage in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when the person might reasonably have expected such other person to use, consume, or be affected by the goods in this state, provided that the person also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
“(F) having an interest in, using, or possessing real property in this state;
“(G) contracting to insure any person, property, or risk located within this state at the time of contracting;
“(H) living in the marital relationship within this state notwithstanding subsequent departure from this state, as to all obligations arising from alimony, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in this state; or
“(I) otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirement of subdivisions (A)-(H) of this subsection (2), so long as the prosecution of the action against a person in this state is not inconsistent with the constitution this state or the Constitution of the United States.”
In the present case, only 4.2(a)(2)(I) is applicable. SAS is a private corporation organized under the laws of the Republic of South Africa. SAS is not licensed to do business in Alabama and has no agents, servants, officers, employees, or representatives in Alabama or in the United States. SAS does not have an office or post office box in Alabama or anywhere else in the United States. The only contact between SAS and Alabama is that cargo loaded by SAS in South Africa arrived, and was unloaded, in Mobile.
This Court has stated that “the proper inquiry for determining if the maintenance of a suit offends constitutional due process centers on fairness and convenience.” MacKinnon v. St. Louis Southwestern Ry., 518 So.2d 89, 92 (Ala.1987), citing Mann v. Frank Hrubetz Co., 361 So.2d 1021 (Ala.1978). The United States Supreme Court stated in World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, at 297, 100 S.Ct. 559, at 567, 62 L.Ed.2d 490 (1980), that “the forseeability that is critical to due process analysis ... is that the defendant’s conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.” See MacKinnon, 518 So.2d at 92, applying that standard. SAS, a company located in another country, and whose function it is to load cargo for ships destined *466 for world-wide ports, could not have reasonably anticipated being haled into court in Alabama to defend a negligence action.
The trial court properly dismissed SAS for lack of in personam jurisdiction.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES and HOUSTON, JJ., concur.