John D. BAUMHAUER, et al., Plaintiffs,

v.

GROVES, JOHN & WESTRUP, LTD., Defendants.

Civ. A. No. 92-0450-B-M.

United States District Court, S.D. Alabama, S.D.

May 6, 1993.

George Huddleston, Spanish Fort, AL, for plaintiffs.

Rae M. Crowe, Clifford C. Brady, Mobile, AL, for defendants.

## ORDER

BUTLER, District Judge.

This matter is before the Court on a motion to dismiss for lack of personal jurisdiction or, alternatively, to dismiss on the basis of *forum non conveniens,* filed by defendant Sphere Drake Insurance, Plc. After due consideration of the motion, the arguments of counsel, the affidavits and documents submitted by the parties, and the applicable law, the Court finds that the motion is due to be granted.

## FINDINGS OF FACT

Defendant Sphere Drake Insurance, Plc. ("Sphere Drake") is an English corporation located in Brighton and London and is organized and chartered in England as an insurance underwriter or insurer. Plaintiffs John D. Baumhauer and Dusko Bruer are residents of Mobile and Baldwin Counties in Alabama, and are the owners of the "PELAGIC", a sailing yacht which was insured under a policy of insurance underwritten by Sphere Drake. On or about December 18, 1991, the "PELAGIC" was sunk in the mari-

na in Dubrovnik, Yugoslavia, where the vessel had been moored. The defendant denied plaintiffs' resulting claim for the loss of the vessel on the ground that coverage was excluded under the policy's risk of war exclusion. Plaintiffs then filed the instant action alleging breach of contract and bad faith.[1]

When plaintiffs purchased the "PELAGIC" in 1986, both the vessel and plaintiff Baumhauer were in Palma, Majorca. Upon purchasing the vessel, Baumhauer contacted an agent in Majorca for quotes for marine insurance coverage. Baumhauer's agent in Majorca contacted Bowring, Marsh & McLennan, Ltd. ("BMM"), insurance brokers located in Southampton, England for a quote. In turn, BMM contacted Groves, John & Westrup, Ltd., a corporate subsidiary of Sphere Drake, which operates as a marine underwriting manager and claims agent with respect to yacht and cargo coverage for Sphere Drake, and secured a certificate of insurance on the vessel from Sphere Drake.

Baumhauer returned to Mobile after purchasing the "PELAGIC", but the vessel remained in Europe and was moored at Dubrovnik, Yugoslavia. At the time of purchase, "PELAGIC's" documented home port was Boston. At the time it was sunk, the vessel's documented home port was New Orleans. The hailing port named on the stern of the vessel was Mobile, Alabama.

Each year plaintiffs renewed their marine insurance policy from Mobile through BMM. Plaintiffs mailed their premium to BMM in England which then deducted its commission and mailed the remainder to Sphere Drake. Sphere Drake mailed all policy renewals, notices, etc. to BMM in England. The policy in effect at the time the "PELAGIC" was sunk contemplated that the vessel would be "laid up" for twelve months in Dubrovnik.

During 1991 plaintiffs, who had been trying unsuccessfully to sell the "PELAGIC", decided to have the vessel shipped to the United States. Because their standard marine policy did not cover transportation, plaintiffs purchased a special transportation endorsement or policy to cover the "PELAG-

IC" during its shipment by cargo ship from Yugoslavia to the United States.

The transportation endorsement states:

It is noted and agreed that the yacht will now be transported as cargo from Kotor, Yugoslavia to New Orleans, U.S.A. onboard the cargo vessel "ADMIRAL ZMA-JEVIC". Upon delivery to New Orleans the yacht will be sailed to Mobile, Alabama to be laid up ashore and surveyed as per the warranty or certificate No. 028901/03.

Cargo Insurance Conditions as per attached certificate.

Among the conditions listed on the certificate of insurance are the "Institute Cargo Clauses (A)". Under the terms and conditions of the Clauses, coverage under the transportation endorsement did not become effective until "the time the goods leave the warehouse or place of storage at the place named herein for the commencement of the transit." The place named in the contract for the commencement of transit was Kotor, Yugoslavia.

## CONCLUSIONS OF LAW

Once a defendant has moved to dismiss for lack of personal jurisdiction, the burden is on the plaintiff to prove that the defendant is subject to personal jurisdiction. In deciding a motion to dismiss solely upon pleadings and affidavits and without an evidentiary hearing, the Court "must accept as true those allegations of the complaint which are not controverted by the defendant's evidence and deny the motion to dismiss if the plaintiff presents a prima facie case of jurisdiction." *Bracewell v. Nicholson Air Services, Inc.*, 748 F.2d 1499, 1504 (11th Cir.1984). "[W]here the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir.1990).

In order for the Court to acquire jurisdiction over a nonresident defendant, the defendant must be amenable to service of process. *Prejean v. Sonatrach*, 652 F.2d 1260 (5th Cir. Unit A 1981). A federal court

---

1. Plaintiffs originally named Bowring Marsh & McLennan and Groves, John & Westrup, Ltd. as defendants. Plaintiffs dismissed Bowring, Marsh & McLennan, and the parties agreed to the substitution of Sphere Drake for defendant Groves, John & Westrup, Ltd.

sitting in diversity achieves jurisdiction over an out-of-state defendant by service under the long-arm statute of the forum state. *Id.; Walker v. Newgent,* 583 F.2d 163 (5th Cir. 1978), *cert. denied* 441 U.S. 906, 99 S.Ct. 1994, 60 L.Ed.2d 374 (1979). The reach of a state's long-arm statute is limited by Fourteenth Amendment due process requirements. *Id.*

In most instances, determining whether the court has *in personam* jurisdiction requires a two-part analysis. First the Court must determine whether the defendant's actions meet the requirements of the forum state's long-arm statute. If not, the Court has no jurisdiction because service of process cannot be achieved and the inquiry ends. If the defendant's actions do satisfy the statutory requirements, then the court must consider whether the statute goes beyond the permissible limits of state jurisdiction over nonresident defendants set forth in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. *Prejean,* 652 F.2d at 1264.

■ Alabama courts have abandoned this two-step analysis through their interpretation of the state's long-arm statute. *Hales v. First Appalachian Corp.,* 494 F.Supp. 330 (N.D.Ala.1980). Rule 4.2(a)(2)(I) of the *Alabama Rules of Civil Procedure* permits service of process on an out-of-state defendant who has "some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action." *Ala. R.Civ.P.* 4.2(a)(2)(I). The Alabama Supreme Court has held that this subsection extends jurisdiction "as broad as the permissible limits of due process." *Alabama Waterproofing Co. v. Hanby,* 431 So.2d 141 (Ala.1983). Thus, under Alabama law the Court must engage only in a single-step analysis to determine whether personal jurisdiction exists; that is, "whether the assertion of jurisdiction meets federal due process standards." *MacKinnon v. St. Louis S.R. Co.,* 518 So.2d 89, 91 (Ala.1987).

■ Although plaintiffs recognize that the Alabama long-arm statute is coextensive with due process, they nonetheless engage in a two-step analysis of the jurisdictional issue.

First, plaintiffs contend that service was proper under *Ala.R.Civ.P.* 4.2(a)(2)(G) of Alabama's long-arm statute which provides that sufficient contacts exist when a defendant is sued as the result of "contracting to insure any person, property, or risk located within this state at the time of contracting." *Id.* Next, plaintiffs point out cases holding that similar long-arm provisions satisfy due process requirements. *A fortiori,* plaintiffs argue, since service was properly obtained under a long-arm provision that has been held to comport with due process, personal jurisdiction over the defendant is proper.

Plaintiffs' argument, although logically correct, is unsupported by the facts. Subsection 4.2(a)(2)(G) requires that the person, property or risk insured be located within the state at the time the contract is entered into. The risk insured in this case is the "PELAGIC", which at the time of contracting, and at all times thereafter, was located in Europe. Consequently, 4.2(a)(2)(G) does not apply, and the Court must engage in its own due process analysis to determine whether defendant has sufficient "minimum contacts" with the forum.

In *International Shoe,* the Supreme Court held that it would be a violation of due process to bring a person into a forum with which he has established no meaningful ties. In that case the Court set forth the guiding principle of analysis in personal jurisdiction cases. The Court held that in order for a court to exercise personal jurisdiction over a defendant, that person must have "minimum contacts" with the forum such that the exercise of jurisdiction over him "does not offend traditional notions of fair play and substantial justice." *Id.* 326 U.S. at 316, 66 S.Ct. at 158.

Consequently, the due process analysis is a two-part inquiry: (1) whether plaintiff has sufficient minimum contacts with the forum and (2) whether the exercise of jurisdiction over the defendant offends traditional notions of fair play and substantial justice. *Cronin v. Washington National Ins. Co.,* 980 F.2d 663, 670 (11th Cir.1993). Because the Court has determined, that defendant lacks

minimum contacts with this forum, there is no need to consider the latter issue.

■ "Jurisdiction is proper where the defendant's contacts with the forum proximately result from actions by the defendant that create a substantial connection with the forum state." *Id.* at 670. Minimum contacts exist where the controversy arises out of, or is related to, the defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984).

■ Plaintiffs contend that both the marine policy and the transportation endorsement create sufficient contacts between the defendant and the forum. The Court will analyze separately the contacts created by each since the parties treat these as separate contracts and plaintiffs argue that they are suing under two different policies. First, plaintiffs contend that the following contacts arising from the marine policy give rise to personal jurisdiction over the defendant: (1) the defendant collected premiums from plaintiffs and delivered policy renewals to plaintiffs in Mobile, (2) in the event of loss the policy required the defendant to pay off the ship's mortgage to First Alabama Bank in Mobile, and (3) if the plaintiff had been sued in Mobile, defendant would have had to defend the suit here under the terms of the policy.

None of these contacts are sufficient for the following reasons. Plaintiffs' first ground is unsupported by the evidence. Plaintiffs originally argued that Sphere Drake collected premiums in Alabama and mailed policies to plaintiffs in Alabama. In response, defendant presented uncontradicted evidence that it had no direct contact with plaintiffs or the forum concerning the issuance or renewal of the policy. Plaintiffs now attempt to argue that the defendant, through its agent Bowring, Marsh & McLennan, collected premiums from and mailed policies to plaintiffs in Alabama.

Sphere Drake, in affidavit testimony, denies that BMM was acting as its agent.

Plaintiffs' affidavit testimony does not contradict this statement. Baumhauer, in his supplemental affidavit, simply states that Sphere Drake authorized BMM to bind coverage on Bruer, Baumhauer and the "PELAGIC" and that BMM "were as much the agents of Sphere Drake as they were our agent." [2] Nowhere do plaintiffs point out either what the requirements for agency are under British law or how the relationship between Sphere Drake and BMM allegedly satisfies these requirements.

The latter contacts cited by plaintiffs related to the marine policy, *i.e.,* performance of certain contractual obligations in Mobile, are insufficient to satisfy due process.

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts[.]" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984)).

These contacts are not the result of any purposeful availment on the part of the defendant. The place of the ship's mortgage is the result of the plaintiffs' own choosing. The defense of a lawsuit under the "duty to defend" clause of the policy is fortuitous since it could occur anywhere plaintiffs may be sued. If such a clause were sufficient to confer personal jurisdiction, an insurance company would be subject to personal juris-

---

**2.** This statement is essentially meaningless since it could mean either that BMM was the agent of both or that BMM was the agent of neither.

724

diction anywhere its insured happened to be sued.

 Plaintiffs additionally argue that the defendant's contacts with the forum arising from the transportation policy are sufficient to satisfy due process.[3] This argument overlooks an essential element of due process, that is, the controversy must arise out of, or be related to, defendant's contacts with the forum. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872. Since the transportation endorsement never became effective this action neither arises out of, nor is it related to, that contract or any contacts associated with that contract.

The transportation endorsement states that it is subject to the Institute Cargo Clauses (A) as part of the conditions of insurance. Clause 8.1 of the Institute Cargo Clauses (A) states that the insurance attaches at the time the goods "leave the warehouse or place of storage at the place named herein for the commencement of the transit." Based on Baumhauer's supplemental affidavit, it appears that plaintiffs are attempting to argue that commencement of transit had begun, and therefore the transportation policy became effective, because the vessel had been prepared for transit and moved from its slip to another place in the marina in Dubrovnik.[4] However, the policy named Kotor, Yugoslavia, as the place for the commencement of transit. Therefore, the transportation policy covered the vessel only from the time it was loaded in Kotor until it reached Mobile. Since the vessel never reached Kotor, the transportation policy could not have become effective.

In sum, those contacts of defendant which give rise to this cause of action are not

sufficient to satisfy due process. Because the Court has determined that it does not have personal jurisdiction over the defendant, there is no need to address defendant's motion to dismiss based on *forum non conveniens.*

Accordingly, it is **ORDERED** that defendant's motion to dismiss be and hereby is **GRANTED.**

### *FINAL JUDGMENT*

Pursuant to separate order entered this day granting defendant's motion to dismiss based on lack of personal jurisdiction, it is hereby

**ORDERED, ADJUDGED** and **DECREED** that this action be and hereby is **DISMISSED** without prejudice.

---

**3.** According to plaintiffs, the following contacts result from the transportation policy: (1) plaintiffs acquired the policy from Mobile, (2) under the contract the vessel's destination was Mobile, (3) the contract required that the vessel be laid up in Mobile after its arrival for survey and (4) preparations for transportation of the vessel were being made from Mobile.

**4.** In his supplemental affidavit Baumhauer states, "[The "PELAGIC"] had been moved to another position within the marina [at Dubrovnik] to facilitate transit and onloading procedures had commenced at the time of the loss for

which claim has been made." Baumhauer Supp.Aff. at 3 (doc. # 26). However, in his first affidavit plaintiff admits that the policy did not become effective until the vessel was loaded at Kotor: "In July 1991, Mr. Bruer and I determined to bring the vessel back to Mobile, Alabama and purchased a policy of Marine transport insurance from Sphere Drake dated August 14, 1991. This policy covered loss occasioned to the vessel *during the loading of the same in Kotor, Yugoslavia and during the transport of the same to Mobile, Alabama, via New Orleans."* Baumhauer Aff. at 2 (doc. # 21) (emphasis added).